765 F.2d 1353
 103 Lab.Cas. P 34,714
 PRESIDIO VALLEY FARMERS ASSOCIATION, Plaintiff-Appellee,
Cross-Appellant,
v.
William E. BROCK, Secretary of Labor, and U.S. Department of
Labor, et al., Defendants,
Antonio Montelongo, et al.,
Defendants-Intervenors-Appellants, Cross-Appellees.
 No. 84-1432.
 United States Court of Appeals,
Fifth Circuit.
 July 25, 1985.
 
 Texas Rural Legal Aid, Inc., David G. Hall, Weslaco, Tex., and Edward J. Tuddenham, Hereford, Tex., for defendants-intervenors-appellants, cross-appellees.
 Thomas Bacas, Washington, D.C., for plaintiff-appellee, cross-appellant.
 Appeals from the United States District Court for the Western District of Texas.
 Before THORNBERRY, RUBIN and HIGGINBOTHAM, Circuit Judges.
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 Some 250 Mexican nationals employed by the Presidio Valley Farmers Association and its grower members during the 1978 harvest season complain of numerous violations of the Farm Labor Contractor Registration Act and of breaches of the promised terms of employment. The workers prevailed below and both sides appealed. Most of the issues presented to us were resolved in Salazar v. PVFA, 765 F.2d 1334 (5th Cir.1985), a related case we decide today, and we answer them with reference to that decision. Two issues are not identical to those presented in Salazar. On those points we vacate and remand the district court's award of damages for breaches of the work agreement and reverse the judgment below insofar as it was assessed against the individual growers jointly and severally for the FLCRA violations of the PVFA.
 
 
 2
 * This appeal is a sequel to Salazar and we reference the statement of facts set out in that opinion. We add only the following paragraphs which describe additional circumstances relevant to this appeal.
 
 
 3
 In the winter and spring of 1978, while PVFA and its members were still employing Mexican nationals who held H-2 visas issued in June 1977, the Association began plans to obtain labor for the 1978 harvest. PVFA was essentially the same organization it had been before, except that in November 1977, it incorporated as a non-profit corporation under the laws of the State of Texas. The stated purpose of PVFA was, as before, "to contract for and obtain migrant labor for the use of its members."
 
 
 4
 The Department of Labor again refused to certify PVFA's petitions to import alien labor, and this time the INS declined to issue the visas without certification. Agents from DOL had investigated the work conditions provided in the 1977 harvest season and had reported numerous violations of the conditions of employment required by its H-2 regulations. In the face of such abuses, INS was unwilling to issue the requested visas.
 
 
 5
 By May of 1978 PVFA and its grower members were desperate for harvest workers. Claiming that the Valley's onion crop was "rotting in the fields," PVFA petitioned the federal district court in El Paso on behalf of its grower members and sought an injunction requiring DOL to issue certification for the requested workers and requiring INS to issue visas for them. The court issued the injunction, but conditioned its issuance on PVFA's compliance with the minimum terms of work required by DOL's H-2 regulations. These terms included a 3/4 work guarantee, a wage of $2.97 per hour, a $5 per day housing allowance, an $8 per week transportation allowance, and a promise to pay travel expenses for all workers who travelled into the area from outside Presidio/Ojinaga. In 1978 these conditions of employment were codified at 20 C.F.R. Sec. 655.200 et seq.
 
 
 6
 Shortly thereafter, two H-2 visa recipients, Estaban Zuniga and Melquiades Lara, sought to intervene in the injunction suit to assert a counterclaim against PVFA on behalf of a class composed of all H-2 workers certified under the 1978 petitions. The intervenors alleged that despite the conditions imposed by the district court when it issued its injunction, PVFA and its grower members were not honoring the terms and conditions of employment required by the H-2 regulations. The intervention petition was not granted until March 18, 1981, and approximately one year later, the case was transferred to the Pecos division, the court that was handling Salazar. Both cases involved many of the same parties. In December 1982 the court granted the workers leave to amend their counterclaim to allege violations of the FLCRA and to add as defendants PVFA's member growers.[1] The charges made in the counterclaim were substantially the same as those made in the complaint in Salazar, and the court handled the two cases in a similar fashion.
 
 
 7
 As in Salazar the workers' petition for class certification was denied on the basis that common issues did not predominate with respect to liability and damages, and the case therefore proceeded with some 250 named intervenors.[2] Although the court did not need to determine the terms and conditions of the employment agreement as it had in Salazar,[3] it utilized an identical procedure to that used in Salazar to determine liability and damages for the breaches of the FLCRA and the work agreement. In fact, the liability/damages trial described in Salazar was the same trial used to assess liability and damages in the instant case. The court also considered motions for summary judgment analogous to those filed in Salazar, motions supported by the workers' answers to defendants' interrogatories.
 
 
 8
 As in Salazar, the workers did not seek actual damages and instead requested the court to award liquidated damages under the FLCRA both for the violations of that act and for defendants' breaches of the work agreement. The damages awarded by the district court were, for the most part, identical to those determined in Salazar. The court assessed liability and damages against PVFA and its grower members jointly and severally for all of the found violations of the FLCRA and breaches of the work agreement.
 
 
 9
 Both sides appeal, raising many of the same issues we resolved in Salazar. The workers' complaints about the damages award for breaches of the work agreement differ slightly from those made in Salazar, and defendants bring one additional point, arguing that because PVFA was incorporated under Texas law in 1978, its individual members cannot be held vicariously liable for the damages assessed against PVFA.
 
 II
 
 10
 We address first those issues in this appeal that are controlled by our decision in Salazar. That case disposes of the workers' complaints regarding the court's liquidated damages awards of $15.00 for the various violations of the FLCRA and those regarding the court's refusal to certify as a class under Fed.R.Civ.P. 23(b)(3) the H-2 workers employed during the 1978 harvest season.[4] Salazar also forecloses defendants' claims that PVFA did not function as a farm labor contractor, that it did not function as a farm labor contractor with respect to these workers, and that its violations of the FLCRA were not intentional.[5]
 
 III
 
 11
 Both the workers' and the defendants' complaints about the district court's damage award for breaches of the work agreement are similar to those made in Salazar. The workers complain that the district court erred in refusing to award damages for defendants' breach of the 3/4 work guarantee and in limiting the award to those workers employed on a piece rate basis. Defendants again challenge the trial/summary judgment procedure employed by the court to determine liability and damages.
 
 
 12
 As in Salazar, we vacate the award of damages for breaches of the work agreement so that the district court can make findings on defendants' liability for the asserted breaches of the 3/4 work guarantee and the damages, if any, to be awarded for that breach. The court should explain as well its basis for awarding no damages to non-piece rate workers for the alleged breaches of the work agreement. Finally, on remand the court should obtain express consent from all counsel on the procedures to be followed in assessing liability and damages for the breaches of the work agreement.
 
 IV
 
 13
 The district court made no distinction between PVFA and its members when it assessed liability and damages in the instant case. The court rejected defendants' complaints that the workers should not have been permitted to amend their counterclaim to add the individual growers as defendants[6] but did not address the additional defense that the growers could not be held liable under the FLCRA for what PVFA, the corporation, had done. The court simply stated: "PVFA breached statutory and regulatory duties imposed by FLCRA during [the 1978] growing season, and ... the individual dues paying members of PVFA were jointly responsible for the statutory damages resulting from the violations...."
 
 
 14
 On appeal the individual grower defendants reassert the argument made below that, under Texas law, "the members of a non-profit corporation shall not be personally liable for the debts, liabilities, or obligations of the corporation." Tex.Rev.Civ.Stat.Ann. art. 1396-2.08(E). Because PVFA was the only farm labor contractor in this case, to the extent the damages the district court awarded were based on violations of the FLCRA which could have been committed only by a farm labor contractor, the individual growers cannot be held responsible for them.
 
 
 15
 The workers offer three theories for holding the members of PVFA jointly and severally liable with the Association: that the individual members are liable for the damages under the "joint employer" theory applied in Salazar; that the individual members of PVFA are liable for its violations on the ground that the violations were tortious acts committed personally by the individual members; and that the PVFA was a sham corporation. We are not persuaded by any of these arguments.
 
 
 16
 * The "joint employer" concept applied in Salazar cannot help the workers here. In Salazar the PVFA was held liable under the FLCRA for its violation of its statutory obligations under the Act as well as for the growers' breaches of the workers' employment agreement. The first set of obligations was triggered by PVFA's status as a farm labor contractor, and the obligation to honor the work agreement by PVFA's status as a farm labor contractor who jointly employed the workers with the member growers. The FLCRA expressly imposed both sets of obligations on the Association, but only because the PVFA first met the statutory requirements which made it a farm labor contractor.
 
 
 17
 As we explained in Beliz v. McLeod & Sons Packing Co., 765 F.2d 1317 (5th Cir.1985), the FLCRA provides separate sets of obligations for contractors and growers. Id. at 1331. We there concluded that, given the Congressionally imposed division of responsibility between these parties, a grower could not be held vicariously liable for the FLCRA violations of a farm labor contractor who also functioned as the grower's agent. For the same reasons, the "joint employer" concept cannot support the district court's imposition of joint and several liability on the growers for PVFA 's omissions. Such joint responsibility would effectively negate the statutory distinctions we preserved in Beliz.
 
 2
 
 18
 Nor are the individual growers responsible for the FLCRA damages assessed against PVFA on the ground that the violations were committed by them as agents of the corporation. We recognize that a corporation's violations of certain statutory duties have been held to be tortious in nature, see, e.g., Rohm & Haas Co. v. Dawson, 557 F.Supp. 739, 818 (S.D.Tex.1983), rev'd on other grounds, 722 F.2d 1556 (Fed.Cir.1983), and that corporate officers can be held liable for such violations if they personally participate in them or direct others to carry them out, see, e.g., L.C.L. Theatres v. Columbia Pictures, Inc., 619 F.2d 455 (5th Cir.1980), but we need not inquire whether the statutes and acts at issue here trigger such liability. The workers have not made sufficiently specific allegations or proof to support the theory.
 
 
 19
 The workers ask us to affirm the imposition of joint and several liability on all of the growers for all of the found violations of the FLCRA by the PVFA on a theory which, by its very nature, requires individualized proof. Even if we assume that each of the grower members violated the terms of the workers' employment agreement, such actions would render the individual defendants liable only to those workers they employed, not to workers employed by others. Having eschewed individual proof for a trial on liability and damages based on the testimony of "representative" H-2 workers and only a few of the individual defendants, the workers have not created a record that will support the proffered theory.
 
 3
 
 20
 The workers raised too late the only theory for joint and several liability that has arguable merit--that the grower members are personally liable because the corporate form of PVFA was a "sham." If PVFA's corporate veil were pierced, joint and several liability such as that assessed in Salazar would be appropriate, but the workers neither pleaded nor tried their case on the sham theory. Indeed, the argument was not raised until the workers filed their Brief in Support of Judgment a month after the liability/damages trial. Absent pleadings and evidence to support the theory or trial by consent, the district court could not have used the sham corporation theory to impose joint and several liability on the growers for the damages assessed against PVFA; nor can we do so on appeal.
 
 V
 
 21
 There are two violations of the FLCRA for which the individual defendants, although they are not farm labor contractors, may be liable: (1) failure to ensure that PVFA was registered with DOL as a farm labor contractor as required by 7 U.S.C. Sec. 2043(c); and (2) failure to maintain wage records as required by 7 U.S.C. Sec. 2050c. The workers requested damages from the individual defendants for these violations in their amended counterclaim and the record indicates that both requirements may have been violated. Accordingly on remand the workers are entitled to seek damages from the growers for any such violations, but only on an individual basis--each worker from his employer. The growers are not jointly and severally liable for these violations. Nor are the individual grower defendants liable for the breaches of the work agreement, because the workers have pursued that claim only against PVFA.[7] Indeed, the workers could not recover such damages against the individual defendants under the FLCRA because 7 U.S.C. Sec. 2044(b)(4), which requires an agricultural employer to abide by the terms of his work agreement, applies only to agricultural employers who are also farm labor contractors.
 
 VI
 
 22
 In sum, we reference Salazar for our resolution of all issues in this appeal save two. The damages award for breaches of the work agreement is vacated and remanded for redetermination, and all damages awards by the court are reversed to the extent they impose joint and several liability on the individual grower defendants for the FLCRA violations of PVFA.
 
 
 23
 AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART AND REMANDED.
 
 
 
 [1]
 For convenience sake we will refer to counterclaim defendant PVFA and its members as "defendants."
 
 
 [2]
 Only two workers had initially intervened and brought counterclaims against PVFA, but the court allowed some 248 Mexican workers to join the case as intervenors
 
 
 [3]
 Those conditions were set when the El Paso court, in granting PVFA's requested injunction for the issuance of the H-2 visas, ordered it to comply with DOL's H-2 regulations
 
 
 [4]
 We also reject the workers' claim that the district court erred in failing to hold defendants liable for making "false and misleading statements" about the terms and conditions of employment for the reasons stated in note 8 of our opinion in Salazar
 
 
 [5]
 As for the complaints by both parties that the district court erred in determining that certain intervenors were or were not entitled to the housing allowance, we conclude that the district court's determinations were based on factual findings which are not clearly erroneous
 
 
 [6]
 We conclude that the district court was within its discretion in permitting intervenors to so amend their counterclaim under Fed.R.Civ.P. 15(c)
 
 
 [7]
 The workers have waived such individual contract claims if those claims were ever asserted. They state in note 4 of their reply brief:
 [Intervenors] did not contend [below] and do not now that the individual growers were parties in a suit to enforce separate employment relationships with the individual employees on their farms. The counterclaim was directed at the employment relationship between [the workers] and PVFA; the individual growers were parties to the suit in their capacity as members of PVFA, jointly and severally liable for the employment relationship entered into by PVFA, not for any "separate employment relationship with their individual employees."