863 F.2d 384
 110 Lab.Cas. P 35,169, 13 Fed.R.Serv.3d 41,
27 Fed. R. Evid. Serv. 263
 Amado Salazar CALDERON, et al., Plaintiffs-Appellees, Cross-Appellants,
v.
PRESIDIO VALLEY FARMERS ASSOCIATION, et al.,
Defendants-Appellants, Cross-Appellees.
PRESIDIO VALLEY FARMERS ASSOCIATION, Plaintiff-Appellant,
Cross-Appellee,
v.
Antonio MONTELONGO, et al., Intervenors-Defendants,
Appellees-Cross-Appellants.
Amado Salazar CALDERON, et al., Plaintiffs-Appellants,
v.
PRESIDIO VALLEY FARMERS ASSOCIATION, et al., Defendants-Appellees.
PRESIDIO VALLEY FARMERS ASSOCIATION, Plaintiff-Counter Claim
Defendant-Appellee,
v.
Ray MARSHALL, Etc., et al., Defendants,
Antonio Montelongo, et al., Intervenors-Defendants and
Counter Claim Plaintiffs-Appellants.
 Nos. 87-1512, 87-1513 and 87-1701.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 20, 1989.
 
 Thomas J. Bacas, Washington, D.C., Presidio Valley Farms Ass'n, et al.
 Edward J. Tuddenham, Washington, D.C., David Hall, Texas Rural Legal Aid, Inc., Weslaco, Tex., for Calderon, et al. and Antonio Montelongo, et al.
 Appeals from the United States District Court for the Western District of Texas.
 Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Several hundred Mexican farmworkers sued the Presidio Valley Farmers Association and its grower members for breach of their employment agreement and numerous violations of the Farm Labor Contractor Registration Act. The PVFA had hired the workers during the 1977 and 1978 harvest seasons pursuant to "H-2" temporary visas issued by the Immigration and Naturalization Service. The district court entered judgment in favor of the workers, and both sides appealed.
 
 
 2
 In Salazar-Calderon v. Presidio Valley Farmers Association, 765 F.2d 1334 (5th Cir.1985), cert. denied, 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986), we affirmed liquidated damages against PVFA and its members, jointly and severally, in the amount of $15 per worker for each of five "technical" FLCRA violations that occurred during the 1977 harvest. However, we vacated the court's $300 liquidated damages award to piece rate workers for a sixth FLCRA violation, "failure to abide by the working arrangement." We remanded the case for a new damages trial on that issue because (1) the trial court omitted from its liability findings and damage award several alleged violations, and provided no explanation for limiting the award to piece rate workers; (2) the trial court had erroneously excluded from the working agreement's terms a weekly transportation allowance, and a guarantee of work or pay for at least three-quarters of the visa period; and (3) the PVFA had not agreed to the district court's procedure for determining these damages.
 
 
 3
 In Presidio Valley Farmers Association v. Brock, 765 F.2d 1353 (5th Cir.1985), cert. denied, 474 U.S. 1073, 106 S.Ct. 833, 88 L.Ed.2d 804 (1986), now on appeal as Montelongo, we adopted the same rulings for FLCRA violations during the 1978 harvest, except that PVFA members were not jointly and severally liable because PVFA had incorporated that year.
 
 
 4
 On remand, the district court consolidated the two cases and reconsidered its earlier class action decision, certifying a class of H-2 workers pursuant to Fed.R.Civ.P. 23(b)(3). After hearing testimony from 507 class members, the court awarded the workers in Salazar and Brock $705,710.53 and $333,718, respectively, in actual damages for breach of the "working arrangement." The court also awarded $176,323 and $40,028.50, respectively, in attorneys' fees.
 
 
 5
 Both sides now appeal. PVFA challenges the trial court's award of actual damages and contends that they were erroneously calculated. PVFA also contends that the court erroneously held the growers jointly and severally liable for PVFA's FLCRA violations during the 1978 harvest. Finally, PVFA argues that the trial court erred by certifying the class action on remand and by awarding attorneys' fees. The workers urge that the court erred by denying prejudgment interest on damages for breach of the working agreement, denying damages to particular class members, and by failing to include recovery for paralegal and travel time in determining attorneys' fees. For reasons stated below, we affirm in part and reverse in part.
 
 
 6
 * We turn first to the holding that PVFA is liable under state law for breach of contract. We originally vacated the trial court's damage award for a sixth FLCRA violation, "failure to abide by the working arrangement." We remanded the case to allow the district court to redetermine damages for that FLCRA violation in light of "additional terms" that we found were part of the work agreement. Salazar, 765 F.2d at 1353; Brock, 765 F.2d at 1357. We did not reopen the legal theory involved. Yet on remand, the district court found PVFA liable under a legal theory not urged in the original appeals, breach of state law contract. This finding reaches beyond our original mandate, and we reverse the district court's findings insofar as they are based on a state law breach of contract theory. See Stamper v. Baskerville, 724 F.2d 1106, 1107-1108 (4th Cir.1984) (trial court may decide matters left open on remand only insofar as they are consistent with appellate court's mandate).
 
 A. JOINT & SEVERAL LIABILITY
 
 7
 PVFA attacks the trial court holding that its members are jointly and severally liable for PVFA's violation of the work agreement during the 1978 harvest. The district court acknowledged our previous holding that PVFA's members were not jointly and severally liable for PVFA's FLCRA violations during the 1978 harvest. See Brock, 765 F.2d at 1359. The court found, however, that as joint employers PVFA's members could be held jointly and severally liable for breach of state law contract, a theory not available to it, as we have explained. Workers' counsel conceded during oral argument that PVFA's members could not be held jointly and severally liable for PVFA's FLCRA violations because PVFA had incorporated during that year. We must then reverse the court's finding that PVFA's members are jointly and severally liable for PVFA's violation of the work agreement during the 1978 harvest.
 
 
 8
 PVFA also claims that the district court erred in holding the growers individually liable for liquidated damages previously assessed against PVFA for five "technical" FLCRA violations during the 1978 season. Apparently, this assessment was not intended by the district court.[1] The workers concede this error in their brief and voice no objection to a modification of the judgment. Accordingly, we modify the district court's decision to reflect that PVFA's members are not individually liable for liquidated damages resulting from PVFA's five "technical" FLCRA violations during the 1978 season.
 
 B. ATTORNEYS' FEES
 
 9
 PVFA next argues that the trial court erroneously awarded attorneys' fees under Tex.Civ.Prac. & Rem.Code Secs. 38.001-006 (Vernon 1986) for a case based on federal law. The FLCRA does not itself authorize an award of attorneys' fees. Montelongo v. Meese, 803 F.2d 1341, 1355 n. 23 (5th Cir.1986); Alvarez v. Longboy, 697 F.2d 1333, 1340-41 (9th Cir.1983). Workers' counsel conceded at oral argument that their claim to attorneys' fees rested solely upon state law.[2] Because this case is based entirely upon FLCRA, we vacate the district court's award of attorneys' fees in both cases.[3]
 
 II
 
 10
 We next address claims relating to the district court's damage award on remand.
 
 A. ACTUAL DAMAGES
 
 11
 PVFA contends that the district court erred in awarding actual damages for breach of the work agreement on grounds that (1) the FLCRA precludes an award of both liquidated and actual damages; (2) the record does not support the trial court's conclusion that the workers' waiver of actual damages during the first trial was "conditional"; and (3) the workers failed to answer PVFA's interrogatories on actual damages. We reject all three arguments.
 
 
 12
 First, PVFA argues that the trial court could not award actual damages for a sixth FLCRA violation because it had earlier awarded liquidated damages for five separate violations. PVFA claims that an award for actual damages for breach of the work agreement would constitute double recovery. The workers respond that FLCRA merely prohibits recovery of actual and liquidated damages for the same violation.
 
 
 13
 The statute at issue, 7 U.S.C. Sec. 2050a(b) (repealed 1982), provides that:
 
 
 14
 If the court finds that the respondent has intentionally violated any provision of this chapter or any regulation proscribed hereunder, it may award damages up to and including an amount equal to the amount of actual damages, or $500 for each violation, or other equitable relief.
 
 
 15
 While the plain language of the statute makes clear that FLCRA prohibits recovery of actual and liquidated damages for the same violation, neither party cites relevant cases or legislative history that would resolve the issue as to whether the statute prohibits recovery of liquidated damages for some FLCRA violations and actual damages for other, distinct FLCRA violations.
 
 
 16
 We reject PVFA's interpretation of the statute and its argument that allowing both actual and liquidated damages for distinct FLCRA violations constitutes double recovery. The "harm" caused by the five "technical" FLCRA violations, which involved PVFA's failure to process paperwork, bears no relation to the harm that resulted from the sixth FLCRA violation, that the farmers underpaid their workers in violation of the work agreement.[4]
 
 
 17
 PVFA next urges us to reject actual damages on grounds that the workers waived them at the first trial. On the first appeal, we observed that the workers waived actual damages for breach of the work agreement only after the district court excluded the "core of the plaintiffs' contractual claims" from the terms of the agreement. Salazar, 765 F.2d at 1348 & n. 9. Concluding that these terms were erroneously excluded from the agreement, we left the waiver issue for the district court to decide on remand. Id. at 1349 & n. 13. On remand, the district court concluded that the workers had "conditioned" their 1984 waiver of actual damages on the defendants' acceptance of a simplified damages proceeding.[5] The court adopted this procedure in calculating its liquidated damage award at the first trial, but the defendants later attacked the procedure on appeal on grounds that they had not consented to try damages in that manner. Id. at 1349. Accordingly, the district court ruled on remand that "Plaintiffs' waiver was of no consequence" because it was a "conditional waiver."
 
 
 18
 We need not decide whether the record supports the trial court's finding that the workers' waiver of actual damages was conditional. In remanding the case to the district court to consider terms erroneously excluded from the work agreement, we stated:
 
 
 19
 The district court should first address the defendants' argument that plaintiffs have waived their rights to actual damages. If there has been such a waiver, the court may nevertheless find it appropriate to vacate its liquidated damages award for the violations of the work agreement and reassess liability and damages in light of these additional terms.
 
 
 20
 Salazar, 765 F.2d at 1353 n. 18.
 
 
 21
 On remand, the court cited our instruction and concluded that because additional terms had been included in the work agreement, the prior liquidated damages award must be vacated and actual damages determined. We affirm the district court's equitable discretion to award actual damages in light of these newly included terms.
 
 
 22
 Finally, PVFA contends that even if the workers' claims for actual damages were reinstated, the workers waived those claims when they failed to respond to an interrogatory asking each worker to specify their actual damages and how they were calculated. The workers respond that they delivered proof of claim forms and a computer printout specifying the damages and calculations for each worker. PVFA counters that the printouts did not comply with Fed.R.Civ.P. 33(a) because they were not answered separately in writing under oath and were not signed.
 
 
 23
 We find that PVFA has waived any claim of defect in the workers' response to its interrogatory question. At no time did PVFA move to compel more specific answers or oppose the workers' motion for a protective order to allow the workers' attorney to make the specific calculations for the largely uneducated workers. Moreover, we find that even had PVFA not waived this claim, it would fail for lack of prejudice.
 
 B. CLASS CERTIFICATION
 
 24
 PVFA next attacks the district court's class action certification under Fed.R.Civ.P. 23(b)(3) on grounds that it violates Fed.R.Civ.P. 23(c)(1) and for want of predominate common questions sufficient to justify a class action under Rule 23(b)(3). We reject both arguments.
 
 
 25
 Rule 23(c)(1) provides that a class action certification decision "may be altered or amended before the decision on the merits." PVFA argues that the trial court reached the merits on liability and was, therefore, precluded from certifying the class on remand for a determination of damages.
 
 
 26
 We specifically invited the district court to reconsider its decision denying class action certification on remand. Salazar, 765 F.2d at 1350. Such certification decisions are interlocutory and can be altered later under Rule 23(c)(1). Elster v. Alexander, 608 F.2d 196, 197 (5th Cir.1979). See also 7B C. Wright & A. Miller, Federal Practice and Procedure Sec. 1785 at 133-35 (1986) (power to alter prior class certification decision has been utilized at various stages in the litigation, including after trial on the merits). We find no violation of Rule 23(c)(1) in the trial court's decision to certify the class on remand.
 
 
 27
 Rule 23(b)(3) provides that a court may certify a class only if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members...." Fed.R.Civ.P. 23(b)(3). PVFA contends that the court erred on remand by certifying a class solely to redetermine damages. PVFA argues that common questions clearly did not predominate on damages issues, and that such determinations are not suitable for class treatment.
 
 
 28
 The trial court's certification decision on remand, however, encompassed the already-decided liability issues as well as the remaining damages issues. Common liability issues existed both as to the five technical FLCRA violations and the inclusion of the three-quarters guarantee and transportation allowance in the work agreement's terms. Because we find that these common liability issues predominated over the more diverse damages issues, we affirm the trial court's certification decision under Rule 23(b)(3). See Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980)) (upholding appellate court's decision reversing trial court and certifying class action on grounds that entry of judgment for plaintiffs over their objection did not moot the case and terminate their right to appeal denial of certification; plaintiffs' desire to spread litigation costs among all class members constituted a continuing interest in the appeal's outcome).
 
 C. CLASS MEMBERS ENTITLED TO RECOVERY
 
 29
 The district court initially permitted recovery only for those plaintiffs who were named in one of the original complaints and had filed answers to PVFA's interrogatories. PVFA argues that the district court erred on remand by including in the resurrected class three groups of workers whose claims had been previously barred: (1) those who were named as parties before the first appeal but who failed to answer PVFA's interrogatories; (2) those never named as plaintiffs in the original lawsuits; and (3) those who were members of the Zuniga group of plaintiffs. We agree, and accordingly exclude all three groups from recovery.
 
 
 30
 The court dismissed the first of these groups of workers for failure to answer PVFA's interrogatories. These workers never appealed the dismissal of their claims. Therefore, they had no claims to revive when the trial court changed its certification decision on remand.
 
 
 31
 For similar reasons we must deny recovery to group two. Although one subgroup of these workers had answered interrogatories before the first appeal, the trial court dismissed their claims on grounds that they were never named as plaintiffs in the suit. With the exception of a few workers who were later found to have been named in one of the four complaints, we upheld the trial court's dismissals of these workers. Salazar, 765 F.2d at 1351-52. Belated certification does not revive their nonexistent claims.
 
 
 32
 A second subgroup of unnamed workers submitted class claim forms after the district court certified the class on remand. The two-year statute of limitations had run during the time between the original denial and the district court's reversal. When an appellate court overturns a district court's denial of class certification, the date of original filing, rather than the date of eventual certification, is used to determine whether the claims of potential class members are time-barred. Satterwhite v. City of Greenville, 578 F.2d 987, 997 (5th Cir.1978) (en banc). Were this rule not to apply, appeals of certification would most often be meaningless. However, here we affirmed denial of class certification, even though we invited the district court to reconsider. Salazar, 765 F.2d at 1350. The trial court's reconsideration of the certification issue did not, and could not, diminish the import of our affirmance for time preclusion issues. The statute should not toll for those workers who did not intervene or file individual claims after certification was denied.
 
 
 33
 The workers cite United Airlines v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977) for the proposition that the statute of limitations does not run against the claims of putative class members while certification is subject to reconsideration. In that case, the Supreme Court held that a putative class member timely filed her motion to intervene under Fed.R.Civ.P. 24 because she promptly moved to protect unnamed class members when she learned that named class representatives had settled and would not appeal denial of class certification. Id. at 396, 97 S.Ct. at 2470-71. The court stressed that McDonald filed her motion (1) to obtain appellate review of the district court's class certification denial, not her individual claim for a substantive Title VII violation; and (2) acted as soon as she realized the named class representatives would not protect unnamed class members' interests. Id. at 392-94, 97 S.Ct. at 2468-70. Neither consideration applies to the workers at issue.
 
 
 34
 Finally, we exclude the Zuniga group of plaintiffs because their claim is barred by the statute of limitations. They gained no tolling benefit from the district court's reconsideration of class certification.
 
 
 35
 The workers challenge the district court's denial of damages to nine class members. We are not persuaded that the district court was clearly erroneous in rejecting the credibility of witnesses testifying on behalf of these workers. In its brief, PVFA points to several contradictions in the testimony that support the district court's credibility decisions. We therefore affirm the district court's denial of damages to these nine workers.
 
 D. DAMAGE CALCULATIONS
 
 36
 PVFA next contends that in order to calculate actual damages the district court erroneously relied on interrogatory answers, which PVFA contends were inadmissible hearsay. PVFA further objects to inferences drawn by the district court. The trial court's reliance on interrogatory answers and certain inferences, in addition to live testimony, was not an abuse of discretion since the farmers lost or destroyed almost all of the relevant wage records.[6] We find the interrogatory answers admissible under Fed.R.Evid. 803(24), the catch-all hearsay exception. The damages evidence was bound to be inexact because the second trial occurred nearly a decade after the violations and required testimony from uneducated, non-English-speaking laborers. In comparison to the trial date, the claim forms were at least completed relatively soon after the harvest season. This procedure is, in fact, similar to the method we approved in FLSA cases where proof of wages is measured under a looser "just and reasonable inference" standard when employers have kept inadequate wage records. See Reeves v. International Tel. & Tel. Corp., 616 F.2d 1342, 1351 (5th Cir.1980). In any event, any error was not sufficient to justify a reversal.
 
 
 37
 This same standard also justifies the trial court's reliance on certain assumptions in extracting damage calculations from this confusing mass of evidence, such as the court's assumption of a 5-day work week and an 8-hour day when neither the workers nor the farmers could provide precise information. Absolute precision in these damages would have been impossible and we find these sound estimates to be adequate.
 
 
 38
 PVFA also complains that the trial court erred by permitting a computer programmer to testify as an expert witness. The programmer testified about how he generated certain printouts, which compiled damage information from the workers' claim forms and interrogatory answers. The district court admitted the printouts into evidence. PVFA contends that the expert was not qualified to testify about printouts based on inadmissible evidence. PVFA's argument is essentially a restatement of its hearsay objection to the interrogatory answers upon which the printouts were based. As previously stated, we affirm the trial court's reliance on the interrogatory responses under Fed.R.Evid. 803(24). Since no objection is made to the individual's computer programming credentials and since his testimony simply established that his printouts compiled this information without distorting it, we find no reversible error.
 
 
 39
 PVFA next argues that the trial court improperly awarded full damages to workers whose H-2 visas were revoked by INS before expiration. PVFA contends that because the farmers were prohibited from hiring workers without valid visas, such workers have no claim subsequent to revocation. PVFA cites to INS agent Keim's testimony that many aliens admitted pursuant to H-2 visas in 1977 were excludable aliens, and that approximately 50 H-2 visas were later revoked when this was discovered. PVFA also cites to testimony of several workers who acknowledged that their visas had been taken away. The workers point out, however, that INS reclaimed some workers' visas for other reasons, such as when the farmers could no longer provide them with work. Whether or not any particular worker's visa had been revoked, rather than simply "lost" or "taken away" pursuant to the worker's voluntary departure, was a factual question for the trial court. The district court's disposition of this issue is protected by the clearly erroneous standard. In light of the deference due pursuant to this standard, we see no reason to disturb the findings implicit in the trial court's damage award. Because the evidence in the record is ambiguous, we refuse to modify the district court's damage award on this basis.
 
 
 40
 PVFA also challenges the district court's findings as to the visa expiration dates used to calculate damages. PVFA's visa petitions sought visas for six months in 1977 and seventy days or one year in 1978.[7] Some delay occurred, however, between the time the visas were requested and the time they were issued. In issuing the visas, the INS, on its own, altered the visas' expiration dates to take account of this delay. The court used these new expiration dates in calculating damages. PVFA claims that the visa termination dates used to calculate damages should have been those set forth in the farmers' INS visa petitions. The district court's determination of this issue resolves a factual question about the terms of an ambiguous work contract, and is therefore protected by the clearly erroneous standard. We do not find the trial court's decision to use the visa expiration dates on the visas to be clearly erroneous. The workers were given visas and could have reasonably relied on the dates set forth thereon. Moreover, some growers employed workers for the full period of the visas. Given these facts, the court could have reasonably concluded that the work contract between the growers and the workers was governed by the visa expiration dates on the visas. Because these findings of fact are not clearly erroneous, we affirm the trial court's findings with respect to the visa expiration dates used to calculate damages.
 
 E. PREJUDGMENT INTEREST
 
 41
 The workers contend that pursuant to Tex.Rev.Civ.Stat. Sec. 5069-1.05 (Vernon 1985), they are entitled to prejudgment interest on actual damages awarded for breach of the work agreement. Because we find this case based entirely on FLCRA, the Texas statute and state law cases cited in the workers' brief are inapposite. We instead turn to federal law.
 
 
 42
 An award of prejudgment interest is not precluded simply because the damages are based on FLCRA. In Montelongo v. Meese, 803 F.2d 1341, 1354 (5th Cir.1986), we reversed an award of prejudgment interest for liquidated damages under FLCRA on grounds that prejudgment interest is awarded to fully compensate a plaintiff for an actual monetary loss sustained as a result of a defendant's breach of an obligation. Cf. Illinois Central Railroad Co. v. Texas Eastern Transmission Corp., 551 F.2d 943, 944 (5th Cir.1977) (contrasting actual damages with penalties, on which prejudgment interest does not normally accrue). We noted, however, that interest from the date of the breach would have been "appropriate" had plaintiffs chosen to recover actual damages. Id.
 
 
 43
 We see no bar to an award of prejudgment interest on actual damages based on FLCRA. However, we are persuaded that such determinations are within the discretion of the trial court. Bricklayers' Pension Trust Fund v. Taiariol, 671 F.2d 988, 990 (6th Cir.1982) (decision whether to award prejudgment interest within discretion of district court); Oil, Chemical & Atomic Workers International Union, Local No. 4-447 v. American Cyanamid Company, 546 F.2d 1144 (5th Cir.1977) (argument that plaintiffs should be awarded prejudgment interest to make them whole is insufficient to find that district court abused its discretion). We find no basis for holding that the district judge abused his discretion in denying prejudgment interest on actual damages based on FLCRA.
 
 
 44
 The judgment of the district court is, accordingly
 
 
 45
 AFFIRMED IN PART and REVERSED IN PART.
 
 
 
 [1]
 While the district court's judgment held PVFA members individually liable for PVFA's 1978 FLCRA violations, the court made clear in its opinion that it only intended to award "the liquidated damage award affirmed by the Fifth Circuit...."
 
 
 [2]
 Federal courts may award attorneys' fees to a prevailing party, even in the absence of a statutory provision, where the losing party has acted in "bad faith." Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). The record in the instant case does not support such a finding and the workers make no such claim on appeal
 
 
 [3]
 Accordingly, we do not reach the workers' claim that the trial court erroneously excluded paralegal and travel time from the attorneys' fees awarded them
 
 
 [4]
 Defendants do not contend that the $300 liquidated damages award for breach of the work agreement constitutes double recovery and provide no explanation of how the trial court's substitute of actual damages for liquidated damages transforms the award into double recovery
 
 
 [5]
 The workers proposed that the court determine liquidated damages from plaintiffs' answers to defendants' interrogatories and testimony from only a sample of "representative" workers to determine employment conditions considered common to all. Salazar, 765 F.2d at 1348
 
 
 [6]
 The farmers contend that we rejected interrogatory answers as inadmissible hearsay on the first appeal. This is not correct. We rejected the district court's procedure for determining damages, which relied in part on interrogatories, because the court did not obtain PVFA's consent to that procedure. The use of interrogatory answers at the second trial was quite different from the first trial. At the second trial every plaintiff testified to the court and the court based its determination on the live testimony of the workers. Although this does not cure the hearsay defect in the interrogatory answers, the court's procedures at the second trial were more justifiable in light of the difficult nature of the proceedings and the lack of evidence, which is due, in part, to either the farmers' negligence or misconduct
 
 
 [7]
 PVFA filed H-2 petitions with the INS in 1977 and 1978. PVFA specified in its 1977 petition that it needed 661 workers from May 1, 1977 until November 30, 1977. In 1978, PVFA specified that it needed 330 workers for 70 days from May 1, 1978 until July 10, 1978 and 70 workers for 12 months from May 1, 1978 until April 30, 1979