PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 95-3255

D.C. Docket No.94-1066-CV-ORL-18

DAVID M. ARMSTRONG, L. BENSON BARGER, WALLACE D. BLACK, HOWARD
BROOKS, JERRY A. BUDD, SONJA M. CARTER, DOMINICK C. CIZEK, CAROL D.
CLARKE-ILEY, CHARLES H. DAVIS, KENNETH O. GIESSUEBEL, HEROLD P. GLASER,
ROBERT A. HAVLISH, KUMAR HINDUJA, JOSEPH C. JETT, GLENN E. JOHNSON,
ROBERT C. LERCHE, CALVIN N. LIGHTNER, GEORGE W. MCGUIRK, JAMES W.
MCLEAN, WILLIAM G. MURPHY, DONALD L. PRASKY, CLARK C. RAINS, KENNETH
A. RICHARDS, RUSSELL G. ROBERTS, LINDA L. RYAN, VICTOR W. SHAW, LINTON
W. SMITH, MICHAEL SYLVESTRI, DELBERT S. TURNER, EDWARD W. WALSH,
JOSEPH W. WILLIAMSON,

Plaintiffs-Appellants,

versus

MARTIN MARIETTA CORP.,
MARTIN MARIETTA TECHNOLOGIES, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

**(April 16, 1998)**

Before HATCHETT, Chief Judge, TJOFLAT, ANDERSON, EDMONDSON, COX, BIRCH,
DUBINA, BLACK, CARNES and BARKETT, Circuit Judges.*

* Circuit Judges Frank M. Hull and Stanley Marcus became members of the court after this case
was argued and taken under submission. They elected not to participate in this decision.

TJOFLAT, Circuit Judge:

In Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 103 S.Ct. 2392 (1983), the Supreme Court held that the commencement of a class action suspends the applicable statute of limitations for all asserted members of the putative class "until class certification is denied." Id. at 354-55, 103 S.Ct. at 2397-98. The question presented in this case is whether, in the absence of controlling authority, the statute of limitations begins to run again immediately upon the district court's entry of the interlocutory order denying class certification,[1] or whether the statute remains tolled through final judgment in the former class action and completion of an appeal from the order denying class certification.[2] The appellants advocate the latter rule, and a divided panel of this court adopted a variation that rule.[3] For the reasons set forth below, we hold that the tolling of the statute of limitations ceases when the district court enters an interlocutory order denying class certification.

---

[1] The district court's denial of class certification is an interlocutory order, not reviewable as of right until after the entry of final judgment. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 467-69, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 351 (1978).

[2] The scope of our holding today is limited. Chardon v. Soto, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983), establishes the proposition that, in cases brought under 42 U.S.C. § 1983, state law on tolling will control the issue we address today. Federal statutes that specifically provide for suspension of the statute of limitations, such as the Clayton Act, see 15 U.S.C. § 16(i), will of course control when they are applicable. Our holding today therefore establishes a rule of decision for this circuit that applies only when no federal statute or state law controls.

[3] The dissent apparently would have us adopt a variation of that rule. The precise contours of both the panel's holding and of the dissent's preferred holding are unclear. As discussed infra part III, we prefer a clear rule that operates early in the litigation, and that settles the tolling question with regard to all parties, as opposed to a complex of vague rules under which the tolling period will be indeterminate and almost certainly very long.

2

I.

This case arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (1994) (the "ADEA"). The thirty-one appellants in the instant case are former Martin Marietta[4] employees who lost their jobs between 1992 and 1993. (Two other appellants, Myrtle Y. Redding and Marlon K. Tarter, have been dismissed from this appeal pursuant to joint stipulation of the parties.) Following their terminations, twenty-nine appellants filed timely charges of age discrimination with the Equal Employment Opportunity Commission (the "EEOC"), as is required by statute. See 29 U.S.C. § 626(d) (providing that a person who wishes to bring a civil action against his or her employer pursuant to the ADEA must first file a timely charge of discrimination with the EEOC). Three appellants--Clarke-Iley, Johnson, and Shaw-- did not file EEOC charges.

At various times, the EEOC notified each appellant (other than Clarke-Iley, Johnson, and Shaw) that his or her charge of age discrimination was dismissed. Receipt of such notice triggers the statute of limitations for bringing a civil action in court, and the plaintiff must then file suit within ninety days. See 29 U.S.C. § 626(e).[5] This ninety-day limitations period is

---

[4] It is unclear from the record on appeal whether appellee Martin Marietta Corporation or appellee Martin Marietta Technologies, Inc. was the employer in this case, although Martin Marietta Corporation asserts that all the appellants were employees of the subsidiary Martin Marietta Technologies and not of the parent corporation. It is unnecessary for us to decide this issue, however. We therefore use the name "Martin Marietta" to refer to both appellees.

[5] Section 626(e) reads in pertinent part:

If a charge filed with the Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section . . . against the respondent named in the charge within 90 days after the date of the receipt of such notice.

tolled, however, while the plaintiff is a putative member of a class action.  See Crown, Cork, 462

U.S. at 353-54, 103 S.Ct. at 2397-98.  Twenty-eight of the thirty-one appellants opted into

Carmichael v. Martin Marietta Corp., Case No. 93-434-CIV-ORL-19, an age discrimination

class action that was already proceeding in the Middle District of Florida, on June 4, 1993.[6]  The

remaining three appellants--Davis, Havlish, and Hinduja--were named plaintiffs in the

Carmichael action.

On April 7, 1994, the district court in Carmichael determined that the appellants were not

"similarly situated" to the other Carmichael plaintiffs.  The Carmichael court therefore certified a

plaintiff class that did not include as members the appellants in the instant case.  The court then

dismissed the claims of appellants Davis, Havlish, and Hinduja without prejudice, and denied the

_____

29 U.S.C. § 626(e).
 The ninety-day statute of limitations applies in the instant case because all of the adverse
employment decisions at issue occurred after November 21, 1991, the effective date of the Civil
Rights Act of 1991, Pub. L. No. 102-166, § 115, 105 Stat. 1071, 1079 (1991), which altered the
statute of limitations applicable to ADEA cases.  The previous statute of limitations for ADEA
cases was two years from the date of the adverse employment decision, or three years from that
date for willful violations.  See 29 U.S.C. § 626(e)(1) (repealed 1991); 29 U.S.C. § 255.  See also
Grayson v. K Mart Corp., 79 F.3d 1086, 1100 (11th Cir. 1996).

 [6]  Class actions under the ADEA are authorized by 29 U.S.C. § 626(b), which expressly
borrows the opt-in class action mechanism of the Fair Labor Standards Act of 1938, 29 U.S.C. §
216(b) (1994).  Section 216(b) provides for a class action where the complaining employees are
"similarly situated."  However, "[n]o employee shall be a party plaintiff to any such action
unless he gives his consent in writing to become such a party and such consent is filed in the
court in which such action is brought."  Id.  See also LaChapelle v. Owens-Illinois, Inc., 513
F.2d 286, 288 (5th Cir. 1975) (explaining the fundamental difference between the opt-in class
action under section 216(b) and the opt-out class action under Federal Rule of Civil Procedure
23).
 The sparse record on appeal in the instant case does not satisfactorily establish the exact
date or dates on which the appellants opted into the Carmichael class action.  Construing the
facts in the light most favorable to the appellants (the non-moving parties in Martin Marietta's
motion for summary judgment), we assume arguendo that all appellants opted into the class on
June 4, 1993--the date when the Carmichael class action complaint was filed.  The record on
appeal presents no conclusive evidence to the contrary.

remaining appellants' requests to opt into the Carmichael class. None of the appellants requested leave to file an interlocutory appeal from that order under 28 U.S.C. § 1292(b).[7]

On October 11, 1994, more than ninety days after the Carmichael court's partial denial of class certification, the thirty-one appellants and fourteen additional plaintiffs (including former appellants Redding and Tarter) filed the complaint that commenced the instant action in the district court. On October 25, 1994, an amended complaint added a forty-sixth plaintiff, appellant Wallace Black.

On January 17, 1995, Martin Marietta filed a motion for partial summary judgment against the thirty-one appellants, on the ground that they had failed to file their individual lawsuits within ninety days after their dismissal from the Carmichael class action. Martin Marietta also sought summary judgment against appellants Clarke-Iley, Johnson, and Shaw on the alternative ground that each had failed to file a charge of age discrimination with the EEOC within 300 days of the alleged discrimination.

On March 22, 1995, a magistrate judge issued a report recommending that the district court grant Martin Marietta's motion for partial summary judgment. The magistrate judge concluded that the ninety-day statute of limitations, which was tolled while the appellants were putative members of the Carmichael class action, recommenced when the Carmichael court dismissed their claims. Therefore, because the appellants' instant claims were filed more than ninety days after the dismissal in Carmichael, those claims were barred by the statute of

_____

[7] The Carmichael action is still an active lawsuit as of the date of this opinion. No judgment was ever entered under Fed. R. Civ. P. 54(b) with regard to the dismissal of appellants Davis, Havlish, and Hinduja from the Carmichael action, and that dismissal remains non-final and non-appealable.

5

limitations. The magistrate judge rejected Martin Marietta's alternative ground for partial

summary judgment against Clarke-Iley, Johnson, and Shaw, concluding that this circuit's

"piggybacking" rule excused them from filing charges of discrimination with the EEOC. See

Grayson v. K Mart Corp., 79 F.3d 1086, 1101-02 (11th Cir. 1996) (holding that an individual who

did not file an EEOC charge may opt into an ADEA class action by "piggybacking" onto a

timely charge filed by one of the named plaintiffs, provided that the claims of the named plaintiff

and the piggybacking plaintiff arise out of similar discriminatory treatment in the same time

frame).[8]

On May 10, 1995, the district court adopted the magistrate judge's report and

recommendation, and granted partial summary judgment against the thirty-one appellants. On

September 14, 1995, the district court amended its order and replaced the partial summary

judgement with a final judgment pursuant to Federal Rule of Civil Procedure 54(b). This appeal

followed.


II.

The primary issue on appeal is whether the district court was correct in holding that the

statute of limitations, which was tolled while the appellants were putative members of the class

action, resumed running when the Carmichael court dismissed the appellants' claims in that case.

We hold that the limitations period for filing an individual suit (and for intervening in an extant

action) did so resume. We therefore affirm the decision of the district court with regard to

---

[8] Because we hold that the district court correctly granted summary judgment against
appellants Clarke-Iley, Johnson, and Shaw, see infra part IV, we do not address Martin
Marietta's argument that the district court misapplied the piggybacking rule.

almost all of the appellants.[9]

The ADEA's statute of limitations requires the plaintiff to file suit within ninety days after receiving notice that the EEOC has dismissed the plaintiff's age discrimination charge. See 29 U.S.C. § 626(e). Membership in a pending class action, however, tolls the ninety-day period for filing an individual lawsuit. See Crown, Cork, 462 U.S. at 353-54, 103 S.Ct. at 2397-98. The purpose of such tolling is to encourage class members reasonably to rely on the class action to protect their rights. Without tolling, class members would have to take action prior to the running of the statute of limitations in order to protect themselves in case class certification is later denied, even when they may reasonably expect to receive relief through the already-filed class action. See id. at 350-51, 103 S.Ct. at 2396; see also Griffin v. Singletary, 17 F.3d 356, 360 (11th Cir. 1994) ("Insofar as the individual claims are concerned, putative class members should be entitled to rely on a class action as long as it is pending."). Once the district court enters the order denying class certification, however, reliance on the named plaintiffs' prosecution of the matter ceases to be reasonable, and, we hold, the excluded putative class members are put on notice that they must act independently to protect their rights. See United Airlines, Inc. v. McDonald, 432 U.S. 385, 399, 97 S.Ct. 2464, 2472, 53 L.Ed.2d 423 (1977) (Powell, J., dissenting).

The appellants, however, argue that the statute of limitations should continue to be tolled, even after the district court's denial of class certification, because the denial of certification in an interlocutory order may be reversed by the district court at any time before final judgment, or by

_____

[9] As explained in detail infra part IV, we reverse the district court's entry of summary judgment against appellants Armstrong, Cizek, Richards, and Walsh.

7

the court of appeals after final judgment or, in rare cases, on interlocutory review. We disagree. No reasonable person would rely on the hope that either the district court or this court might someday determine that the suit should have proceeded as a class action.

When the district court denies class certification,[10] the named plaintiffs no longer have a duty to advance the interests of the excluded putative class members. See Fed. R. Civ. P. 23(c)(1), advisory committee's note to 1966 amendment (explaining that the trial court's order denying class certification "strip[s] [the suit] of its character as a class action," thus requiring the litigation to proceed as a non-class action, even though the district court may change its mind and certify a class at any time before a decision on the merits); Pearson v. Ecological Science Corp., 522 F.2d 171, 177 (5th Cir. 1975) (rejecting the argument that the interlocutory nature of the district court's order denying class certification requires the named plaintiffs to exercise a continuing fiduciary duty to the putative class members).[11] Although it is possible that the district court may reconsider its order denying class certification, or that an appellate court may later reverse it, district courts have broad discretion with respect to such rulings, and denials of class certification usually stand. See, e.g., Jones v. Firestone Tire and Rubber Co., Inc., 977 F.2d 527, 531, 535 (11th Cir. 1992) (citing cases for the proposition that "[a] district court's denial of class certification will not be disturbed absent an abuse of discretion" and affirming denial of class certification), cert. denied, 508 U.S. 961, 113 S.Ct. 2932 (1993); see also, e.g., Forehand v.

---

[10]  In the instant case, the Carmichael court did not deny class certification altogether; rather, it certified a narrow class that did not include the appellants. This of course amounted to a denial of class certification as to the appellants. For simplicity's sake, we refer in the text to the more common situation, where a district court denies class certification altogether.

[11]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Florida State Hosp. at Chattahoochee, 89 F.3d 1562 (11th Cir. 1996) (affirming decertification of plaintiff class); Hudson v. Delta Air Lines, Inc., 90 F.3d 451 (11th Cir. 1996) (affirming denial of class certification); Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566 (11th Cir. 1992) (same); Ray v. United States Dept. of Justice, 908 F.2d 1549 (11th Cir. 1990) (same); Palmer v. BRG of Georgia, 874 F.2d 1417 (11th Cir. 1989) (same). Indeed, a review of this court's published case law reveals that one must go back to 1987--over a decade ago--to find a case in which this court squarely reversed a district court's denial of class certification on grounds that the district court abused its discretion. See Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718 (11th Cir. 1987).[12] Thus, reliance on the possibility of a reversal of the court's certification decision is ordinarily not reasonable. We therefore conclude that continued tolling of the statute of limitations after the district court denies class certification is unnecessary to protect any reasonable reliance by putative class members on their former class representatives.

Case law from the Supreme Court and several federal appellate courts also indicates that the tolling period should cease upon denial of class certification. The plain language of Crown, Cork itself clearly implies that tolling is to end upon the district court's denial of class

---

[12] Reconsideration and reversal of a denial of class certification by the district court is also rare. A recent study conducted by the Federal Judicial Center found that, of the cases studied:

1) motions for reconsideration of a denial of class certification were filed in only 4% of cases in which certification was denied;

2) of those cases in which a motion for reconsideration was filed, the motion was denied in 72% of the cases; and

3) in the remaining 28% of the cases, the district either took some other action or, for various reasons, did not rule on the motion for reconsideration.

See Thomas E. Willging, et al., "An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges," 71 N.Y.U. L. Rev. 74, 113-14 (1996). In sum, motions for reconsideration of a denial of class certification are granted in less than 3% of cases in which certification is denied.

certification. The Crown, Cork Court wrote: "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." Crown, Cork, 462 U.S. at 354, 103 S.Ct. at 2397-98. The dissent would have us read the word "denied" in the above passage to mean (among other things) "denied, appealed, denied again, appealed (perhaps) again, and denied again." Even if we were inclined to divine so much from that one word, "denied," we could not do so in light of the fact that in the very next sentence the Court suggests that putative class members who have been denied certification might "intervene as plaintiffs in the pending action." Id. at 354, 103 S.Ct. at 2398. If, as the dissent advocates, we are to read "denied" to mean "finally denied, after all hope for reversal on appeal is gone," then there will rarely be a "pending action" into which the disappointed putative class members might thereafter intervene.[13] We therefore read Crown, Cork to imply strongly, if not to hold, that tolling of the statute of limitations ends upon the district court's denial of class certification.[14]

American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), provides further guidance from the Court. In American Pipe, the State of Utah filed a class action antitrust complaint with just eleven days before the limitations period expired. Several months later, the district court entered an order denying class certification. See id. at

---

[13] As explained infra part III, review of class certification decisions usually follows a final judgment.

[14] Because we read Crown, Cork clearly to imply that the tolling of the statute of limitations should, in the absence of controlling authority to the contrary, end upon the district court's denial of class certification, we refer to that rule of decision, for brevity's sake, as the "Crown, Cork" rule.

541-43, 94 S.Ct. at 760-61.  Eight days after that order was entered, several state and local

agencies that had been putative class members moved to intervene in the action and become

plaintiffs.  Id. at 543-44, 94 S.Ct. at 761.  The Supreme Court stated

> that the commencement of the class action in this case suspended the running of the limitation period only during the pendency of the motion to strip the suit of its class action character.  The class suit . . . was filed with 11 days yet to run in the [limitations] period . . . and the intervenors thus had 11 days after the entry of the order denying them participation in the suit as class members in which to move for permission to intervene.  Since their motions were filed only eight days after the entry of [the] order, it follows that the motions were timely.

Id. at 561, 94 S.Ct. at 770 (emphasis added).  In American Pipe, the parties did not argue that

tolling should continue through appeals.[15]  It thus might be said that the Court did not squarely

reject such an argument.  The Court, however, clearly assumed that tolling should end when the

district court denies class certification, not after the appeals process has run and some later final

order is entered.

The Supreme Court's decision in United Airlines, Inc. v. McDonald, 432 U.S. 385, 97

S.Ct. 2464, 53 L.Ed.2d 423 (1977), also strongly suggests that the tolling of the statute of

limitations ceases as soon the district court denies class certification.  In that Title VII case, the

---

[15]  The primary reason why this issue was not addressed in American Pipe, we imagine, was because, in that case, the Clayton Act provided not only a controlling statute of limitations but also an instruction regarding tolling--specifically, that tolling would be "suspended" during the pendency of the class action.  See id. at 561, 94 S.Ct. at 770.  The Court read this statutory language to direct that the tolling period end upon the district court's denial of class certification.  See id.  It therefore might be said that American Pipe's clear implication that tolling should end upon denial of certification below should be honored only when the Clayton Act's limitations provisions control.  We read American Pipe, however, as establishing a general federal rule of decision--that the limitations period will be tolled while a class action is pending--pursuant to an historical "judicial power to toll statutes of limitation in federal courts," see id. at 558, 94 S.Ct. at 768, and as explained in the text, we also read the Court's opinion as assuming that the rule we adopt today is the "default rule."

11

district court denied class certification and the named plaintiffs thereafter settled their claims against the defendant. Eighteen days after the district court entered a judgment of dismissal based on the settlement, a disappointed putative class member filed a motion to intervene for the sole purpose of appealing the district court's earlier denial of class certification. See id. at 388-90, 97 S.Ct. at 2466-67. The Supreme Court held that the motion was timely because it was filed "within the [thirty-day] time period in which the named plaintiffs could have taken an appeal." Id. at 396, 103 S.Ct. at 2471. In its analysis, the Court addressed the defendant's argument that the intervenor had no interest in the litigation because the statute of limitations had expired. The Court emphasized that the purpose of the motion was to appeal the denial of class certification, and not to litigate an individual claim:

> This [statute of limitations] argument might be persuasive if the respondent had sought to intervene in order to join the named plaintiffs in litigating her individual claim . . . for she then would have occupied the same position as the intervenors in American Pipe. But the later motion to intervene in this case was for a wholly different purpose. That purpose was to obtain appellate review of the District Court's order denying class action status . . . and the motion complied with, as it was required to, the [thirty-day] time limitation for lodging an appeal . . . . Success in that review would result in the certification of a class, the named members of which had complied with the statute of limitations; the respondent is a member of that class against whom the statute had not run at the time the class action was commenced.

Id. at 392, 97 S.Ct. at 2468-69. The Court's rationale strongly implies that the statute of limitations for filing an individual suit (and for intervening to litigate one's claim) begins to run again as soon as the district court denies class certification--although an excluded putative class member whose individual claim is barred by the statute of limitations may still intervene for the

12

purpose of appealing the denial of class certification after final judgment.[16]

Finally, as the dissent concedes, language in <u>Chardon v. Soto</u>, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983), is in tension with the dissent's position. The specific issue before the Court in <u>Chardon</u> was whether a Puerto Rican statute of limitations would control in a case brought under 42 U.S.C. § 1983. <u>See</u> <u>id.</u> at 651-52, 103 S.Ct. at 2613-14. The Court concluded that the Puerto Rican statute, and state statutes of limitations generally, would control in actions under section 1983 because the

> federal interest in assuring the efficiency and economy of the class action procedure . . . is vindicated as long as each unnamed plaintiff is given as much time to intervene or file a separate action as he would have under a state savings statute applicable to a party whose action has been dismissed for reasons unrelated to the merits, or, in the absence of a statute, the time provided under the most closely analogous state tolling statute.

<u>Id.</u> at 661, 103 S.Ct. at 2618. As stated, <u>Chardon</u> dealt with a question of the applicability of state law under section 1983, and the Court's decision was therefore motivated in large part by concerns of federalism; in short, the Court concluded that the federal interest in the efficiency of federal class action procedure was satisfied as long as a putative class member in federal court had as long to file his individual suit as he would have had in state court.

The instant case presents no concerns of federalism, but the Court's holding in <u>Chardon</u>

---

[16] We note that, in at least some cases, the named plaintiff also may appeal the denial of class certification, even if she prevails on the merits below, settles her claim, or otherwise ceases individually to have a controversy with the defendant. <u>See</u> <u>Deposit Guaranty Nat'l Bank v. Roper</u>, 445 U.S. 326, 336, 100 S.Ct. 1166, 1173 63 L.Ed.2d 427 (1980) (holding that named plaintiffs' case or controversy was not mooted, and that they might appeal denial of class certification, even after entry of final judgment in their favor but over their objections); <u>United States Parole Comm'n v. Geraghty</u>, 445 U.S. 388, 408, 100 S.Ct. 1202, 1215, 63 L.Ed.2d 479 (1980) (holding that named plaintiff may appeal denial of class certification even when his own claim has been rendered moot).

13

is still instructive. <u>Chardon</u> held that the federal interest in the efficiency of federal class action procedure was satisfied by the application of state statutes of limitations <u>only</u> "<u>after class certification is denied</u>" (and the facts of the case make it clear that the Court was referring to the district court's denial of certification). <u>Id.</u> (emphasis added). We therefore read <u>Chardon</u> to draw a distinction between 1) the federal interest in encouraging reliance upon the class action mechanism <u>prior to</u> denial of certification in the district court, and 2) the federal interest in doing so <u>after</u> denial of certification in the district court. The federal interest in encouraging reliance upon the class action mechanism prior to denial of certification is strong, because reliance on the mechanism is reasonable and saves many individual suits and motions for intervention from being filed; for this reason, as the <u>Chardon</u> Court noted, <u>American Pipe</u> established tolling of limitations during the pendency of a class action. <u>See id.</u> at 658-60, 103 S.Ct. at 2617-18. The federal interest in encouraging reliance upon the class action mechanism <u>after</u> denial of certification in the district court, however, is at best very weak (as explained <u>infra</u>, we believe it to be virtually non-existent); this, we believe, is the central reason why the <u>Chardon</u> Court allowed state tolling rules to trump the asserted federal interest in class action efficiency <u>after</u> the denial of certification in the district court but not before.

In addition to this guidance from the Supreme Court, several appellate courts have explicitly rejected the argument that the statute of limitations for filing an individual claim should remain tolled through an appeal of the denial of class certification. <u>See Nelson v. County of Allegheny</u>, 860 F.Supp 1080, 1084 (W.D. Pa. 1994) ("In our view, . . . once certification has been denied by the district court, class members cannot reasonably rely on the existence of the suit to protect their rights, and they must timely assert claims in their individual capacities."),

14

aff'd, 60 F.3d 1010 (3d Cir. 1995) (reviewing state law and holding that, in federal courts, the tolling of the statute of limitations ceases upon the entry of the district court's order denying class certification, and does not continue through completion of the appeals process), cert. denied, --- U.S. ---, 116 S.Ct. 1266, 134 L.Ed.2d 213 (1996); Calderon v. Presidio Valley Farmers Ass'n, 863 F.2d 384, 390 (5th Cir.) (per curiam) (holding that the statute of limitations begins to run again upon entry of the district court's order denying class certification, even if the district court later reconsiders the issue and certifies a class), cert. denied, 493 U.S. 821, 110 S.Ct. 79, 107 L.Ed.2d 45 (1989); Andrews v. Orr, 851 F.2d 146, 149-50 (6th Cir. 1988) (holding that the instant suit "ceased to be a class action," and tolling ended, upon entry of order denying class certification); Fernandez v. Chardon, 681 F.2d 42, 48 (1st Cir. 1982) ("[T]olling would have ended, and the remaining portion of the limitations period would have recommenced running . . . when the district court declined to certify the class."), cert. granted sub nom Chardon v. Fumero Soto, 459 U.S. 987, 103 S.Ct. 339, 74 L.Ed.2d 382 (1982), cert. denied sub nom Fumero Soto v. Chardon, 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982), aff'd, Chardon v. Soto, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983); see also Korwek v. Hunt, 827 F.2d 874, 877-79 (2d Cir. 1987) (holding that tolling under American Pipe "does not apply to permit a [disappointed putative class member] to file a subsequent class action following a definitive determination of the inappropriateness of class certification," and holding that a district court's determination that a class action would be unmanageable constitutes such a "definitive determination.");[17] but see

---

[17] The Second Circuit in Korwek also noted that "[t]he motion for amendment [of the district court's order denying certification] under Rule 23(c)(1), a mechanism which protects scarce administrative resources while ensuring re-evaluation of a frequently complex question, provides adequate opportunity for" putative class members expediently to address asserted errors in the district court's initial class certification decision. See Korwek, 827 F.2d at 879. We note

15

Jimenez v. Weinberger, 523 F.2d 689, 696 (7th Cir. 1975) (stating, in dictum, court's supposition that an appeal from a denial of class certification would further toll the statute of limitations).[18]

### III.

Practical considerations also lead us to conclude that, if class certification is denied in whole or in part, the statute of limitations begins to run again as to excluded putative class members as of the date of the district court's order denying certification.

The district court's class certification decision, which defines which claimants are class members and which are not, is not a "final decision" within the meaning of 28 U.S.C. § 1291, because an excluded putative class member is free to proceed with his individual claim. Class certification decisions are therefore not appealable as a matter of right. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 467-69, 98 S.Ct. 2454, 2457-58 (1978). "Such an order is [interlocutorily] appealable, therefore, only if it comes within an appropriate exception to the final-judgment rule." Id. at 467, 98 S.Ct. at 2457. A class certification decision therefore could

---

that a disappointed putative class member could exercise this option even after filing his individual suit, and that a pending motion for amendment could be a ground for a stay of the individual suit.

[18] The dissent also cites several district court opinions, see West Haven Sch. Dist. v. Owens-Corning Fiberglass Corp., 721 F.Supp. 1547, 1555 (D.Conn. 1988); Byrd v. Travenol Lab., Inc., 675 F.Supp. 342, 347 (N.D. Miss. 1987); Davis v. Bethlehem Steel Corp., 600 F.Supp. 1312, 1316 (D. Md.), aff'd on other grounds, 769 F.2d 210 (4th Cir.), cert. denied, 474 U.S. 1021, 106 S.Ct. 573, 88 L.Ed.2d 557 (1985), and an opinion of the Utah Supreme Court, American Tierra Corp. v. City of West Jordan, 840 P.2d 757, 762 (Utah 1992), in support of its argument. We believe the various district court statements cited to have been wrongly decided. We also note that the Utah Supreme Court case contains no rationale, and instead bases its holding on Jimenez and the above-cited district court decisions alone, without citing or discussing Calderon, Andrews, or Fernandez, see id. at 761-62; we therefore conclude that the American Tierra court misread federal law.

16

come before the Court of Appeals in one of three ways.[19]  The most common way is review after

a final judgment in the case, be it after trial, after summary judgment or dismissal, or on a partial

final judgment under Fed. R. Civ. P. 54(b).[20]  A much narrower route to the court of appeals is

interlocutory review of the district court's class certification order under 28 U.S.C. § 1292(b).[21]

An even rarer basis for appellate review of a district court's certification decision is this court's

---

[19]  Note that, under Rule 23, there are numerous reasons why a district judge might deny
class certification.  For example, the named plaintiff may not be an adequate class representative;
there may be too few putative class members to make a class action worthwhile; or the putative
class claims may be too diverse to make a class action workable.  See Fed. R. Civ. P. 23(a), (b).

[20]  Rule 54(b) provides:

Judgment Upon Multiple Claims or Involving Multiple Parties.  When more than
one claim for relief is presented in an action, whether as a claim, counterclaim,
cross-claim, or third-party claim, or when multiple parties are involved, the court
may direct the entry of a final judgment as to one or more but fewer than all of the
claims or parties only upon an express determination that there is no just reason
for delay and upon an express direction for the entry of judgment.

Fed. R. Civ. P. 54(b).  A final judgment under Rule 54(b) will not be available to excluded
putative class members, because they are not party plaintiffs and therefore present no claim upon
which the district court can enter judgment.

[21]  Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise
appealable under this section, shall be of the opinion that such order involves a
controlling question of law as to which there is substantial ground for difference
of opinion and that an immediate appeal from the order may materially advance
the ultimate termination of the litigation, he shall so state in writing in such order.
The Court of Appeals which would have jurisdiction of an appeal of such action
may thereupon, in its discretion, permit an appeal to be taken from such order, if
application is made to it within ten days after the entry of the order:  Provided,
however, That application for an appeal hereunder shall not stay proceedings in
the district court unless the district judge or the Court of Appeals or a judge
thereof shall so order.

28 U.S.C. § 1292(b).

mandamus jurisdiction.

A.

Let us consider the possibility of mandamus review first. In In re Estelle, 516 F.2d 480 (5th Cir. 1975), we stated that the writ of mandamus may issue to correct a clear abuse of discretion or the failure to carry out a ministerial task.[22] We may issue the writ "only in drastic situations, when no other adequate means are available to remedy a clear usurpation of power or abuse of discretion." In re Temple, 851 F.2d 1269, 1271 (11th Cir. 1988). We may issue the writ to direct a district court to take a particular action with regard to class certification only when 1) the district court's certification decision "inflict[s] irreparable harm in that an appeal at the end of the case would be ineffectual," and 2) the certification order constitutes, at a minimum, a clear abuse of discretion.[23] 5 James Wm. Moore et al., Moore's Federal Practice § 23.61[9][c], 23-290 (3d ed. 1997) (citing Temple, 851 F.2d 1269). These conditions are rarely

---

[22] Estelle stated that:

The Writs of Mandamus and Prohibition. . . are reserved for really extraordinary causes, and should be issued only when the right to such relief is clear and indisputable. To some extent they are supervisory in nature and are used to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so. They are not to be used as a substitute for appeal, or to control the decision of the trial court in discretionary matters.
    The Writ is thus a drastic remedy, that must not be used to regulate the trial court's judgment in matters properly left to its sound discretion, but that may be available to confine the lower court to the sphere of its discretionary power.

Estelle, 516 F.2d at 483 (internal citations and quotation marks omitted).

[23] A district court's class certification decision, in and of itself, will constitute a "clear usurpation of power" or a failure to carry out a ministerial task only in the most unusual of circumstances.

18

met; class certification decisions are left to the sound discretion of the district court, see Increase

Minority Participation by Affirmative Change Today of Northwest Florida, Inc. (IMPACT) v.

Firestone, 893 F.2d 1189, 1197 (11th Cir. 1990) (Edmondson, J., concurring in part and

dissenting in part), and in most cases, the certification issue can be effectively reviewed on

appeal after final judgment.  See, e.g., Plekowski v. Ralston-Purina Co., 557 F.2d 1218, 1220 (5th

Cir. 1977).  In any case, excluded putative class members are not "irreparably harmed" by a

denial of class certification, because they may still intervene in the ongoing action or file their

own suits.

We have in the past issued mandamus to direct a district court to decertify an improperly

certified class, when the certification of that class was a clear abuse of discretion.  See, e.g.,

Temple, 851 F.2d 1269; In re Dennis Greenman Securities Litigation, 829 F.2d 1539 (11th

Cir.1987).  These cases, however, presented circumstances not present in the instant case or in

most cases,[24] and moreover, for a court of appeals to direct the certification of a class after the

district court has denied certification is even less likely than for a court of appeals to direct the

decertification of a class after the district court has granted certification.[25]  In short, mandamus

---

[24]  Both Temple and Greenman involved a district court's certification of mandatory
classes in mass tort cases; when the district court has certified a non-mandatory class, the
argument that the court has clearly abused its discretion, and that mandamus relief is appropriate,
will be much more difficult, because the district court's decision will have left other avenues of
relief.  Moreover, as the Temple court noted, "any certification of a mandatory class in a mass
tort case [such as Greenman or Temple], especially one predominantly involving issues of
liability and compensation, must be reviewed with utmost scrutiny [because] [s]uch certification
clearly implicates the Anti-Injunction Act."  Temple, 851 F.2d at 1271 (citations omitted).

[25]  Courts of appeals are less likely to direct the certification of a class than to direct a
decertification simply because it is easier to notice abusively exercised discretion, or legal error,
in a certification already granted, than it is to pick one hypothetical class definition, from a
myriad of possible definitions, and confidently conclude that that one definition is so clearly the
right one that the district court abused its discretion in failing to certify that one class.

19

review of a district court's denial of class certification will be very rare, and <u>reversal</u> of such a denial pursuant to our mandamus jurisdiction will be extremely so; a review of this court's published case law of the last twenty years reveals no case in which we overturned a district court's denial of class certification pursuant to our mandamus jurisdiction.

## A.

Let us next consider the possibility of appellate review of a denial of class certification pursuant to 28 U.S.C. § 1292(b). Section 1292(b) authorizes the courts of appeals to exercise interlocutory review of district court orders only when the lower court certifies for review a question of law, and not when the lower court attempts to certify only discretionary matters, such as the decision to certify a class <u>vel</u> <u>non</u>.[26] <u>See</u> 28 U.S.C. § 1292(b) (1994) (stating that a district court may certify for interlocutory appeal "a controlling question <u>of law</u> as to which there is substantial ground for difference of opinion") (emphasis added); <u>Link v. Mercedes-Benz of North America</u>, 550 F.2d 860, 862-63 (3d Cir. 1976) (holding that "section 1292(b) is not designed for review of factual matters but addresses itself to a 'controlling question of law,'" and that a class certification decision "does not present a 'controlling question of law' to which this court should be hospitable under § 1292(b)"), <u>cert.</u> <u>denied</u>, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); <u>see</u> <u>also</u> <u>Koehler v. Bank of Bermuda, Ltd.</u>, 101 F.3d 863, 866 (2d Cir.

---

[26] Class certification orders are also not among the sorts of interlocutory orders over which the courts of appeals have jurisdiction pursuant to 28 U.S.C. § 1292(a). <u>See</u> <u>Wyatt v. Rogers</u>, 92 F.3d 1074, 1081 (11th Cir. 1996). Class certification decisions may be reviewed under section 1292(a) only when they are integral to a district court's decision regarding an injunctive order, review of which is authorized by section 1292(a). <u>See</u> <u>Plekowski</u>, 557 F.2d at 1220-21 (11th Cir. 1977).

1996) (citing Link in support of the proposition that "§ 1292(b) was not meant to substitute an appellate court's judgment for that of the trial court"). See also, e.g., Andrews v. American Tel. & Tel. Co., 95 F.3d 1014 (11th Cir. 1996) (addressing legal issue of standing as well as discretionary Rule 23 issues); Delta Air Lines, 90 F.3d 451 (11th Cir. 1996) (addressing legal issue of district court's supplemental jurisdiction as well as discretionary Rule 23 issues); K Mart, 79 F.3d 1086 (11th Cir. 1996) (grounding review of grant of class certification on several specified, certified legal issues); Bohannon v. Allstate Ins. Co., 847 F.2d 740 (11th Cir. 1988) (reviewing class certification based on specified, certified issue of contract interpretation under Georgia law); Kirkpatrick, 827 F.2d 718 (11th Cir. 1987) (addressing "fraud-on-the-market" issue as well as Rule 23 issues in Rule 10b-5 securities fraud case); Tucker v. Phyfer, 819 F.2d 1030, 1033-35 (11th Cir. 1987) (affirming denial of class certification on grounds of mootness).[27]

Moreover, the availability of review under section 1292(b) is subject to both the district court's willingness to certify the matter for review and this court's willingness to hear the appeal. See 28 U.S.C. §1292(b) (1994) (stating that, after certification of interlocutory appeal by district court order, "[t]he Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order"); see also Mason v.

---

[27] This not to say that "no district court order involving some exercise of discretion may be reviewed in a § 1292(b) appeal," see Katz v. Carte Blanche Corp., 496 F.2d 747, 753 (5th Cir. 1974). It is instead to say that section 1292(b) does not authorize review of wholly discretionary orders, i.e., that the review must involve, and the district court must certify as appealable, "a controlling question of law." Once the district court has certified a question of law for appeal and this court has granted leave to appeal, the entire order of the district court, including both purely legal questions and discretionary determinations, is subject to our review. See Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1365 (11th Cir. 1997).

21

Stallings, 82 F.3d 1007, 1009-1010 (11th Cir. 1996) (noting that, where district court has denied

§ 1292(b) certification, review "is not open to" court of appeals); Luckenbach Steamship Co. v.

H. Muehlstein & Co., 280 F.2d 755, 757 (2d Cir. 1960) ("[I]n no event can [an] action be

appealable" where there is no final judgment and where circuit court has denied leave to appeal

under §1292(b).). Thus, appellate review of class certification decisions under §1292(b) is and

will be rare. Successful appeals under §1292(b) may be expected to be rarer still; this court has

not accepted a § 1292(b) appeal from a denial of class certification and reversed that denial in

over a decade.[28] See Kirkpatrick, 827 F.2d 718 (11th Cir. 1987).

---

[28] It has also been suggested that a denial of class certification might be reviewable under the "collateral order doctrine" established in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). That is not the case. The Supreme Court has settled this question conclusively:

> To come within the "small class" of decisions excepted from the final-judgment rule by Cohen, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. Abney v. United States, 431 U.S. 651, 658, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651; United States v. MacDonald, 435 U.S. 850, 855, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18. An order passing on a request for class certification does not fall in that category. First, such an order is subject to revision in the District Court. Fed.Rule Civ.Proc. 23(c)(1). Second, the class determination generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Mercantile Nat. Bank v. Langdeau, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963). Finally, an order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff or intervening class members. United Airlines, Inc. v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423. For these reasons, as the Courts of Appeals have consistently recognized, the collateral-order doctrine is not applicable to the kind of order involved in this case.

Coopers & Lybrand v. Livesay, 437 U.S. 463, 468-69, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (emphasis added); see also Wyatt, 92 F.3d at 1081 (11th Cir. 1996).

C.

Let us finally consider the third possible jurisdictional basis for appellate review of a denial of class certification--review after a final judgment in the case below. A denial of class certification is "a procedural ruling, collateral to the merits of a litigation, that is appealable after the entry of final judgment" pursuant to our jurisdiction under 28 U.S.C. § 1291. Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 336, 100 S.Ct. 1166, 1173, 63 L.Ed.2d 427 (1980).[29] The district court's class certification decision is reviewed only for abuse of discretion. See IMPACT, 893 F.2d at 1197.[30]

Review pursuant to section 1291, after entry of a final judgment, is by far the most common basis for appellate review of class certification decisions. See Willging et al., 71 N.Y.U. L. Rev. at 170 (noting that the overwhelming majority of appeals in cases studied were from a final judgment or order). In this context, the dissent's preferred rule admittedly might lead a few disappointed putative class members to refrain from filing individual lawsuits prior to an eventual reversal of the district court's denial of class certification. The dissent's rule might thereby avoid some duplicitous, unnecessarily costly litigation in the few cases where we find the district court to have abused its discretion. But this small measure of added efficiency would come at too high a cost.

---

[29] The final judgment supporting review of a class certification decision under section 1291 could arise in numerous ways: after settlement and dismissal, see, e.g., Nichols v. Mobile Bd. of Realtors, Inc., 675 F.2d 671 (5th Cir. Unit B 1982); after summary judgment, see, e.g., Heaven v. Trust Co. Bank, 118 F.3d 735 (11th Cir. 1997); after trial, see, e.g., Kerr v. City of West Palm Beach, 875 F.2d 1546 (11th Cir. 1989); or pursuant to Fed. R. Civ. P. 54(b), as in the instant case.

[30] The district court's reading of the law that controls its discretionary certification decision is of course reviewed de novo for error. As noted supra, rulings on such questions of law can also support a discretionary interlocutory appeal under 28 U.S.C. § 1292(b).

First, continuing to toll the statute of limitations through trial and through the entire appeals process would seriously contravene the policies underlying statutes of limitations. Statutes of limitations are intended to prevent "the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Order of R.R. Telegraphers v. Railway Express Agency, 321 U.S. 342, 348-49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944).[31] If we accept the appellants' argument, the statute of limitations will remain tolled, in many cases, for several years. The case at bar, for instance--which comes to us upon the entry of a Rule 54(b) judgment, without trial--was initiated when the appellants opted into the already-extant Carmichael action almost five years ago.[32] See Nelson v. County of Allegheny, 60 F.3d 1010, 1013, (3d Cir. 1995) (holding that such an extended tolling period would be "unreasonable"), cert. denied sub nom Beddingfield v. County of Allegheny, --- U.S. ---, 116 S.Ct. 1266, 134 L.Ed.2d 213 (1996). The potential length of the delay certainly increases the possibility that evidence will be lost, memories will fade, and witnesses will disappear. In short, the dissent's rule (to the extent that excluded putative class members might take advantage of it[33]) would leave cases in limbo for years at a time.

---

[31] Age discrimination cases are especially likely to grow stale, as many plaintiffs and witnesses are at or near retirement age when the litigation commences, and could be in failing health or deceased by the time a final judgment is entered and appellate review of the class certification decision has run its lengthy course.

[32] See supra note 5.

[33] The dissent's tolling rule, if utilized by disappointed putative class members, would leave them waiting for years for tolling to end, along with the defendants. We doubt whether many claimants would in fact delay their day in court by several years in hopes of success on appeal, simply because any such hopes are usually slight. As explained in the text, to the extent that claimants might be inclined to rely on appeals of the denial of class certification, such reliance is unreasonable and is to be discouraged. To the extent that excluded putative class members might in fact take advantage of the dissent's rule, they could be expected to do so in

24

Moreover, the extended tolling period may be expected to prejudice many defendants because plaintiffs will be able to choose when to file their suits.[34] As the Court noted in American Pipe, class action procedure prior to the 1966 revision of Rule 23 was criticized for allowing putative class members in some situations to wait until final judgment on the merits of an action before determining whether participation in the action was in their best interests. American Pipe, 414 U.S. at 545-47, 94 S.Ct. 762-63. Putative class members could thereby "benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." Id., at 547, 94 S.Ct. at 763. The dissent's preferred rule would make such abuse possible again.

The threat of such delay and such prejudice would cause many defendants not to contest motions for class certification. The costs to a defendant of this unlimited extension of the tolling period--not knowing when its exposure to claims of putative class members will end--may be such that the defendant forgoes a meritorious defense to certification and instead agrees to litigate all the putative class claims in the instant case. Thus, the dissent's rule would impose an

---

large part because of the rule's prejudicial effect on defendants. See discussion infra.

[34] By conditioning tolling upon the named plaintiffs' decision to appeal and upon putative class members' decisions to file individual suits, the dissent's rule would leave decisions regarding the tolling period in the hands, not of the court, but of plaintiffs and putative class members. The potential for abuse under such an arrangement is significant. Defendants, for instance, regularly extract waivers of the right to appeal from named plaintiffs at settlement, and named plaintiffs have a powerful incentive to grant such waivers; under the dissent's rule, the granting of such a waiver would presumably cause the limitations period to resume running-- an unpleasant surprise for putative class members, whom the dissent wants to rely on the appeals process. The dissent's rule would also encourage plaintiffs and plaintiffs' counsel to file overly broad class complaints; if the limitations period may be tolled indefinitely merely by the filing of a class complaint, there will be an incentive to draw the putative class in the broadest terms possible, so as to toll limitations even as regards claimants who cannot reasonably expect to be included in any class.

25

unnecessary--and perhaps an intolerable--tax on the judiciary, as courts are forced to preside over large class actions as to which a meritorious defense exists but has not been proffered.

Although appeals from denials of class certification can take years, the certification decision itself should come early in the litigation. Rule 23 counsels early determination of motions for class certification. See Fed. R. Civ. P. 23(c)(1) ("As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."). In fact, motions to certify are filed, on average, within three to four months after the filing of an action, and the motions are ruled upon, on average, within three to eight months. See Willging et al., 71 N.Y.U. L. Rev. at 101-02. See also 28 U.S.C. § 476 (1994) (requiring motions pending for more than six months to be included in semi-annual report under Civil Justice Reform Act). If the district court acts seasonably in deciding the certification issue, the extension of the limitations period under the Crown, Cork rule should not be great. See American Pipe, 414 U.S. at 562, 94 S.Ct. at 770 (Blackmun, J., concurring) (noting that district courts can make the tolling rule more fair to defendants by making the class certification decision promptly). Therefore, if the district court's denial of certification triggers the resumption of the limitations period, then the litigants--named plaintiffs, potential class members, and the defendant--should know at an early stage in the litigation how long the statute of limitations will be tolled. In contrast, under the dissent's preferred rule, litigants often would have to wait for years for tolling to end. Waiting until the appellate process has run its course, or until the time for taking an appeal has expired, creates far greater uncertainty as to when the limitations period will resume running than the uncertainty, if any, created by the Crown, Cork rule.

26

D.

As the preceding discussion indicates, interlocutory appeals of denials of class

certification are relatively uncommon and are very rarely successful.  Therefore, reliance on the

possibility of reversal upon an interlocutory appeal is unreasonable.[35]  This proposition is as true

for the dissent as it is for disappointed putative class members; since interlocutory appeals are

uncommon and rarely successful, the dissent's preferred rule would often toll the statute of

limitations through a final judgment as well as through multi-issue appeals--a process that can

take years--on the off chance that a few filings will be saved by the slim prospect of a successful

---

[35]  Proposed Federal Rule of Civil Procedure 23(f), holds the potential to change this analysis if passed in its current form.  Proposed Rule 23(f) reads:

> **(f) Appeals.**  A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order.  An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

167 F.R.D. 559, 560 (1996). If the rule passes, and if it significantly increases the frequency of interlocutory appeals of class certification orders--a development which would depend in large part upon how this court chooses to exercise the discretion granted to it by the proposed rule-- then we may revisit the decision taken today, and might for instance allow continued tolling of statutes of limitations during the pendency of an appeal under the new rule.  We decline, however, to speculate regarding how we might exercise our discretion under the proposed rule and to decide the instant case in reliance upon an as-yet unenacted rule.

The dissent also suggests that a stay of a district court's order denying class certification pending review under the proposed rule would operate to toll the limitations period until the interlocutory appeal has been settled.  We do not find support for this proposition in the text of the proposed rule.  In the absence of guidance, we do not hold that a stay of a district court's order denying certification would toll the limitations period, either under the proposed rule or under the law controlling our decision today.  A stay of an order does not constitute a challenge to that order, and a stay of a denial of class certification in itself offers no reasonable hope for later reversal of the order.

appeal.[36]  This is fundamentally different from Crown, Cork tolling of the limitations period during the pendency of the motion for certification in the district court.  Crown, Cork tolling is short and saves numerous filings by encouraging reasonable reliance on the pending class action. Tolling under the dissent's proposed rule would be long and would save few filings by encouraging unreasonable reliance on the slim possibility of reversal after a long appeal.  This is simply too high a cost for too little benefit.

Moreover, the dissent's analysis fails to delineate how its rule would operate when, as happens in perhaps the greatest number of class actions, the named plaintiffs (along with, perhaps, members of a partially-certified class) settle their claims after denial of certification. When, under the dissent's rule, does the statute of limitations resume running?  When the stipulation of dismissal or the final judgment is entered?  After appeal by the named plaintiffs (who now have little incentive to pursue years of appeals)?  And what if disappointed putative class members seek to intervene, as in United Airlines, for the purpose of appeal?  Should they be given the benefit of years of continued tolling, despite the fact that their chances for success on appeal are terribly slim?  This is not idle nit-picking.  The earlier the event that triggers the resumption of the limitations period--say, the joint stipulation of dismissal--the greater the potential for prejudicial surprise of excluded putative class members.[37]  The later that event--say,

---

[36]  Note that the dissent's rule would justifiably save filings only when the district court has abused its discretion--that is, in the uncommon case.

[37]  The NAACP Legal Defense Fund, as amici curiae, have suggested that we today fashion a rule requiring the district courts to notify excluded putative class members of the court's denial of certification in all class actions, as is required in ADEA "opt-in" class actions. We regard this as an unworkable proposition and, in any case, we do not think it unjust to require that claimants who take advantage of Crown, Cork tolling also monitor developments in the district court and file individually when necessary.

28

the final failure of an appeal by intervening putative class members--the greater the potential that cases will grow stale. The dissent anticipates that we might work these sorts of problems out in due course. We prefer to avoid these problems altogether, with a clear rule that operates early in the litigation and that settles the tolling question with regard to all parties at once.[38]

We therefore conclude that the pendency of a class action tolls the applicable statute of limitations only until the district court makes a class certification decision. If class certification is denied in whole or in part, the statute of limitations begins to run again as to those putative class members who were excluded from the class. In order to protect their rights, such individuals must seek to intervene in the pending action (like the plaintiffs in American Pipe), or file a separate individual action (like the plaintiff in Crown, Cork) before the time remaining in the limitations period expires. If the dismissed class member takes no such action within the remainder of the limitations period, then he may neither file a suit in his own name nor intervene in the already-pending action. In such a situation, the dismissed class member's only avenue of relief is to wait until the pending action reaches final judgment, and then, like the plaintiff in United Airlines, file a timely motion to intervene for the limited purpose of appealing the district court's class certification decision.

The appellants argue that the rule we adopt will force disappointed putative class members to choose between 1) filing an individual lawsuit within the statute of limitations

---

[38] In contrast, under the dissent's rule, the tolling period would vary widely from case to case--depending on whether the named plaintiffs settle, or prevail at trial and do not seek review through appeal or cross-appeal of the certification issue, or lose at trial and take all appeals due them. The limitations period would be dictated by the time it takes to bring a case to conclusion in the district court and to allow the appellate process to run, and by the plaintiffs' strategic decisions regarding which actions to take, and when.

period or 2) exercising their right to appeal the denial of class certification. This does not have to be the case. A putative class member who wishes to preserve both rights should file her individual suit and immediately seek a stay of the individual suit pending the outcome of an appeal from the denial of class certification.[39] If, in the judgment of the district (or state) court to whom the application for a stay has been made, the plaintiff's hopes for reversal of the initial denial of class certification are strong, and if the delay caused by the stay will not be too great, the court may, in its discretion, grant the stay; if the court believes that the chances of reversal are be slim or the delay caused by waiting for the appellate process to conclude will be too long (as will usually be the case), the stay will properly be denied, and the plaintiff will properly have to proceed individually. This is a just, efficient result.

## IV.

In light of our conclusion that the limitations period recommenced when the district court dismissed appellants from the Carmichael class action, we now address whether any of the appellants complied with the applicable statute of limitations.[40]

---

[39] The disappointed putative class member might also seek consolidation of his case with the original class action pursuant to Fed. R. Civ. P. 42. The dissent's rule, we note, would frustrate the policy behind consolidation of cases: Most disappointed putative class members' individual suits would not be amenable to consolidation under the dissent's rule, because under that rule, disappointed putative class members may choose to file their individual suits at any point during the years-long process of trial and appeal. Many of these individual cases would presumably be filed at widely different times, and consolidation would therefore not be practicable. In contrast, under the rule we adopt, the class certification decision and subsequent decisions to file individual suits--and therefore also decisions regarding consolidation of those suits--will come early in the litigation and all at roughly the same time.

[40] The dissent argues that the rule we adopt today should not apply retroactively to the appellants. Retroactive application of a "new" rule of law may be avoided only if:

Civil actions under the ADEA must be filed within ninety days after the plaintiff receives notice of the EEOC's dismissal of the age discrimination charge. See 29 U.S.C. § 626(e) (1994). Three appellants (Davis, Havlish, and Hinduja) were named plaintiffs in Carmichael prior to their dismissal on April 7, 1994. Hinduja's employment at Martin Marietta was terminated on April 24, 1992; Davis' employment was terminated on May 8, 1992; and Havlish's employment was terminated Jan. 1, 1993. The inadequate record on appeal does not disclose when the Carmichael action was filed, or when these three appellants might have intervened therein. These three appellants' claims are certainly barred, however, even if we assume that Davis, Havlish, and Hinduja filed motions to intervene in the Carmichael action immediately upon receipt of their right-to-sue letters from the EEOC. If these three appellants had filed immediately, they would have retained ninety days from the Carmichael court's April 7, 1994, dismissal order in which to bring suit. The instant lawsuit was not filed until October 11, 1994, which is well beyond the end of the ninety-day limitations period. Havlish's, Hinduja's, and Davis' claims are therefore barred.

Twenty-two appellants (Armstrong, Barger, Brooks, Budd, Carter, Cizek, Giessuebel,

---

1) the decision adopting the rule does so "either by overruling clear past precedent or by deciding an issue of first impression the resolution of which was not clearly foreshadowed;" and

2) "the application of the old rule in the instant case [does] not contravene the purpose and operation of the provision being interpreted;" and

3) "application of the new rule in the instant case [would] be inequitable."

McKinney v. Pate, 20 F.3d 1550, 1565 (11th Cir. 1994). The precedent discussed in the text clearly foreshadows the result we reach today. We therefore apply today's holding retroactively.

31

Glaser, Jett, Lerche,[41] Lightner, McGuirk, Murphy, Prasky, Rains, Richards, Ryan, Smith, Sylvestri, Turner, Walsh, and Williamson) received EEOC right-to-sue letters while they were still putative class members in the Carmichael action (i.e., they received their notices after they opted into the Carmichael class action on June 4, 1993, but before the Carmichael court's April 7 partial denial of certification). These twenty-two appellants thus retained ninety days from the Carmichael court's April 7, 1994, dismissal order in which to bring suit. Three other appellants (Black, Davis, and Roberts) received their EEOC notices before opting into the Carmichael class action; thus, they had less than ninety days from the Carmichael court's April 7, 1994, dismissal order in which to file suit. The instant lawsuit was not filed until October 11, 1994, which is well beyond the end of the limitations period with regard to all twenty-five appellants named above. Their claims are therefore barred.

The record indicates that the EEOC notified McLean of the dismissal of his age discrimination charge on June 30, 1994--over two months after the Carmichael court's dismissal order. Accordingly, McLean had ninety days from the date on which he received the June 30, 1994, EEOC notice in which to file suit. Because the instant suit was filed on October 11, 1994, it is not timely as to appellant McLean.

Invoking the "piggybacking" rule, three appellants--Clarke-Iley, Johnson, and Shaw-- never filed age discrimination charges with the EEOC.[42] Clarke-Iley, Johnson, and Shaw had

---

[41] Appellant Lerche's EEOC notice is not in the record; however, an undisputed affidavit filed by the appellees indicates that the EEOC orally informed Lerche of the dismissal of his age discrimination charge while he was a putative member of the Carmichael class action. In any event, appellants do not argue that Lerche should be treated differently.

[42] Instead of filing their own EEOC charges, the three appellants relied on the timely-filed EEOC charge of Raymond T. McGoldrick, one of the named plaintiffs in the Carmichael class action.

32

300 days from the date of their termination by Martin Marietta to file a charge with the EEOC. See 29 U.S.C. § 626(d) (1994) (providing that, in an ADEA case arising in a state that has its own fair employment practice agency, as does Florida, EEOC claims must be filed within 300 days of the allegedly illegal employment action). Shaw's employment with Martin Marietta was terminated on Sept. 25, 1992; Johnson's was terminated on Oct. 2, 1992; and Clarke-Iley's was terminated on Oct. 9, 1992. All three then opted into the Carmichael action on June 4, 1993.[43] The EEOC administrative charge-filing period was tolled as to Clarke-Iley, Johnson, and Shaw during the pendency of their participation in the Carmichael class action--that is, from the time the Carmichael action was filed until the district court, on April 7, 1994, certified a class that did not include the appellants. See Griffin, 17 F.3d at 359-61 (11th Cir. 1994) (holding that "the [EEOC] charge-filing period for the individual claims asserted in [a Title VII class action is] tolled during the pendency of the class action"). Thus, Clarke-Iley, Johnson, and Shaw each had much less than 300 days after the entry of that order to file charges with the EEOC: specifically, Clarke-Iley had 64 days remaining in the limitations period when the district court denied certification on April 7, 1994; Johnson had 59 days left; and Shaw had 54 days left. These periods elapsed even before the instant action was filed in the district court, at which time none of these three appellants had filed a timely charge with the EEOC.[44] Their claims are therefore barred by the administrative statute of limitations and by the requirement that a prospective

---

[43] Martin Marietta asserts that all three opted in much later than June 4, and that all three actually opted in after the 300-day EEOC filing period had elapsed. The inadequate record on appeal, however, does not establish this assertion. We therefore adhere to our assumption, see note 6, supra, that all appellants opted in on June 4. The result remains the same.

[44] We reach this conclusion on the basis of an undisputed affidavit, filed by a Martin Marietta EEO officer, which states that none of three appellants filed with the EEOC before the date of the affidavit (January 17, 1995).

33

plaintiff file a timely charge of discrimination with the EEOC prior to suit in federal court. See 29 U.S.C. § 626(d) (1994).[45]

Finally, the appellants also make an alternative argument that the statute of limitations should be "equitably tolled," because the EEOC told several of them (Armstrong, Cizek, Richards, and Walsh) that the statute of limitations gave them two or three years in which to file suit,[46] and because the EEOC failed to notify a number of other appellants (Barger, Brooks, Budd, Carter, Giessuebel, Glaser, Havlish, Jett, McGuirk, Murphy, Prasky, Rains, Smith, Sylvestri, Turner, and Williamson) that any statute of limitations applied. This argument has merit with regard to the four appellants who were affirmatively misinformed by the EEOC regarding the statute of limitations. See Browning v. AT&T Paradyne, 120 F.3d 222, 225-27 (11th Cir. 1997) (applying equitable tolling in ADEA case when EEOC affirmatively misinformed plaintiff regarding statute of limitations). We therefore hold that the ninety-day statute of limitations was equitably tolled with regard to appellants Armstrong, Cizek, Richards, and Walsh until they filed the instant action. We therefore reverse the district court's summary judgment against them and allow them to proceed.

We do not, however, accord equitable tolling to the appellants who complain that the EEOC's right-to-sue letters failed to notify them that the statute of limitations for bringing an

---

[45] Lest this result seem inequitable, we note that appellants' counsel discussed Griffin v. Singletary at length in their response to Martin Marietta's motion for partial summary judgment, and relied on that opinion's adoption of the "piggybacking" rule in arguing for the inclusion of Clarke-Iley, Johnson, and Shaw in the instant action. It is not inequitable to hold these appellants to Griffin's other holding: that once class certification has been denied to a piggybacking claimant, she must hie herself to the EEOC in order to seek further consideration of her claim.

[46] The EEOC was apparently relying on the pre-1991 ADEA statute of limitations. See supra note 4.

34

individual claim would resume running as of the date of the letter. Appellants have cited

Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196

(1984), and Gates v. Georgia-Pacific Corp., 492 F.2d 292, 295 (9th Cir. 1974), in support of the

proposition that the EEOC is required to inform a complainant, in the right-to-sue letter, that the

statute of limitations resumes running as of the date of the letter. If the EEOC fails to do so, the

appellants have argued, then the statute should be tolled.

Even if the above-cited cases do establish that proposition, they are readily distinguished

from the instant case. In Baldwin and Gates (and in Browning, supra, which in dicta read

Baldwin and Gates much like the appellants), the right-to-sue letter (or an analog thereto) was

received long prior to the initiation of any private litigation by the claimant. The EEOC's letters

to appellants Barger, Brooks, Budd, Carter, Giessuebel, Glaser, Havlish, Jett, McGuirk, Murphy,

Prasky, Rains, Smith, Sylvestri, Turner, and Williamson, in contrast, informed them that their

EEOC complaints were being terminated because they were part of the ongoing Carmichael

litigation. At the time that these appellants received notice that their EEOC complaints were

being terminated, they were aware that they had claims against Martin Marietta under the law;

they were represented by counsel; and they were in fact putative class members (and in

Havlish's case, a named plaintiff), in an ongoing ADEA class action. Under these

circumstances, these appellants were as well-prepared to ascertain the requirements of the statute

of limitations as any claimant. Equitable tolling of the limitations period with regard to these

appellants would "contravene[] the normal rule that ignorance of legal rights or failure to seek

legal advice does not toll the statute," Kazanzas v. Walt Disney World Co., 704 F.2d 1527, 1530

(11th Cir. 1983) (internal quotation marks and citations omitted), and is unwarranted. We

35

therefore decline to hold that the statute of limitations was equitably tolled with regard to these appellants.

**CONCLUSION**

Because we hold that, in the absence of controlling authority to the contrary, statutes of limitations resume running immediately upon the district court's entry of an interlocutory order denying class certification, we AFFIRM the district court's grant of summary judgment against appellants Barger, Black, Brooks, Budd, Carter, Davis, Giessuebel, Glaser, Havlish, Hinduja, Jett, Lerche, Lightner, McGuirk, McLean, Murphy, Prasky, Rains, Roberts, Ryan, Smith, Sylvestri, Turner, and Williamson.

We also AFFIRM the district court's grant of summary judgment against appellants Clarke-Iley, Johnson, and Shaw, because their claims are barred by the administrative statute of limitations and by the requirement that a prospective plaintiff file a timely charge of discrimination with the EEOC prior to suit in federal court.

Finally, we hold that the ninety-day statute of limitations was equitably tolled with regard to appellants Armstrong, Cizek, Richards, and Walsh until they filed the instant action. We therefore REVERSE the district court's summary judgment against them and REMAND the case so that they may proceed.

SO ORDERED.

EDMONDSON, Circuit Judge, concurring, in which BIRCH and BARKETT, Circuit Judges, join:

I concur in the result and in all but Part III of the court's opinion.

The question before us is whether the ADEA's statute of limitations was no longer tolled once the district court denied class certification. I agree that, although the statute of limitations is tolled while a class action is pending, the statute is no longer tolled when class certification is denied by the district court. But we need not decide such issues as the limits of the appealability (or the likelihood of success on appeal) of a district court's denial of class certification. Therefore, while the court's discussion in Part III might be legally correct, I do not believe the discussion is necessary to decide this case. So, I do not concur in that part of today's court opinion.

HATCHETT, Chief Judge, dissenting in part, concurring in part:


I respectfully dissent in part, and concur in part. For the reasons expressed below, I would reverse the district court's ruling that 29 U.S.C. § 626(e) operates to bar the individual ADEA lawsuits of the appellants and remand for further proceedings.

In <u>Armstrong v. Martin Marietta Corp.</u>, 93 F.3d 1505 (11th Cir. 1996), a divided panel of this court outlined three options that plaintiffs who have been dismissed from class actions may take to protect their rights to litigate their claims individually before the applicable statute of limitations runs. The court agreed to reconsider the panel's decision <u>en banc</u>, <u>Armstrong v. Martin Marietta Corp.</u>, 107 F.3d 830 (11th Cir. 1997) (<u>en banc</u>). The principal question that brought this case <u>en banc</u> concerned what action ousted class members may take to protect their rights.

The Judicial Conference of the United States, through its Committee on Rules of Practice and Procedure, has now effectively answered that question. An amendment to the Federal Rules of Civil Procedure that is currently pending details a clear procedure for avoiding an undesirable result like the one that the majority endorses today. <u>See</u> Proposed Fed. R. Civ. P. 23(f).[47] The proposed amendment vests in the federal appellate

---

[47] Proposed Federal Rule of Civil Procedure 23(f) states:

> **(f) Appeals**. A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class

courts the discretion to permit an appeal from an order of a district court granting or

denying class action certification if an application is made within ten days after the entry

of the district court's order.  Under the proposed amendment, the court of appeals and the

district court would each have the discretion to stay proceedings pending the appeal -- an

action that would also operate to continue the tolling of any applicable statute of

limitations.[48]

Of course, the proposed amendment has not yet been adopted.[49]  But that does not

mean that the courts currently lack the supervisory authority to extend the doctrine of

tolling to fashion an interim rule, so long as that rule promotes the purposes of Federal

Rule of Civil Procedure 23 and does not encourage dismissed class members to "sleep[]

---

action certification under this rule if application is made to it within
ten days after entry of the order.  An appeal does not stay
proceedings in the district court unless the district judge or the court
of appeals so orders.

[48]  Unlike the majority, I find no reason not to conclude that a stay necessarily tolls
the applicable statute of limitations.  After all, "[t]o 'stay' an order . . . means to hold it in
abeyance, or refrain from enforcing it."  Black's Law Dictionary 1267 (5th ed. 1979).  In
the abundance of caution, however, ousted plaintiffs may wish to accompany their motion
to stay with a motion asserting that good cause exists for continued tolling.

[49] On November 12, 1997, the Judicial Conference of the United States forwarded
the proposed amendment to the Supreme Court with the recommendation that the
"amendment be approved by the Court and transmitted to the Congress pursuant to law."
Memorandum from Leonidas Ralph Mecham, Director, Administrative Office of the
United States Courts, to the Chief Justice of the United States and the Associate Justices
of the Supreme Court (Nov. 12, 1997).  See 28 U.S.C. §§ 2072-74 (1994).  On or before
May 1, 1998, the Supreme Court will decide whether to approve the proposed rule and
transmit it to Congress.  See 28 U.S.C. § 2074(a).  If adopted, the rule could take effect as
early as December 1, 1998.  See 28 U.S.C. § 2074(a).

on their rights." Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 351 (1983). In the interim, the appropriate answer to the central question before the court -- that is, whether the tolling of the ADEA's ninety-day statute of limitations due to the plaintiffs' membership in a pending class action remained tolled when the district court dismissed the plaintiffs from the pending class action in an interlocutory order -- turns on the policy considerations animating tolling in the first instance, and the interplay between those policy considerations and the purposes statutes of limitations serve.

In Crown, Cork & Seal, the Supreme Court indicated that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 462 U.S. at 349. According to the Court, tolling is appropriate when a class action is pending in order to protect the principal policies behind the class action procedure -- the "promotion of efficiency and economy of litigation." 462 U.S. at 349. The Court also described the purposes of statutes of limitations, indicating that "limitations periods are designed to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." 462 U.S. at 351. Such purposes, the Court indicated, are -- for two distinct reasons -- not frustrated when class action-based tolling occurs. First, "[c]lass members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on named plaintiffs to press their claims." 462 U.S. at 352-53. Second,

a class complaint notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. The defendant[s] will be aware of the need to preserve evidence and witnesses respecting the claims of all members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification.

462 U.S. at 353 (citations and quotation marks omitted).

Crown, Cork & Seal makes it clear that the class action complaint itself eliminates the potential for unfair surprise to defendants -- "regardless of the method class members choose to enforce their rights upon denial of class certification." 462 U.S. at 353. Accordingly, the case for continued tolling when some putative class members have been dismissed from the class turns on whether continued tolling promotes efficiency and economy of litigation without encouraging dismissed class members to sleep on their rights. Continued tolling satisfies these dual objectives in some circumstances.[50]

_____

[50] I am mindful of dicta in Chardon v. Soto, 462 U.S. 650 (1983), that appears to be in tension with the conclusions I reach today. See 462 U.S. at 661 (stating that after class certification is denied, the federal interest in assuring the efficiency and economy of the class-action procedure is vindicated, as long as each unnamed plaintiff is given as much time to intervene or file a separate action as he would have under an applicable tolling statute). The central issue in Chardon, however, was not whether tolling should, under some circumstances, continue pending an appeal, but whether federal or state law provided the appropriate tolling rule in the case at issue. 462 U.S. at 655-62. Chardon is therefore not dispositive on the question before us today. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379 (1994) (stating that it is to the holdings of the Supreme Court, not its dicta, that courts must attend). I further note that the author of Chardon, Justice Stevens, also authored Jiminez v. Weinberger, 523 F.2d 689, 696 (7th Cir. 1975), cert. denied, 427 U.S. 912 (1976), which indicates that tolling continues pending appeal of a district court decision denying class certification.

41

Consider, for instance, the generic case -- not much unlike the case at bar -- where a district court makes an arguably erroneous interlocutory decision denying or limiting class certification. The interlocutory decision leaves a large number of putative class members in limbo -- unable to obtain an immediate appeal as of right; at least potentially out of the case; and possibly at risk of losing their claims altogether if individual lawsuits are not promptly filed. From a policy standpoint, it is far more preferable for the large number of putative class members to get a prompt appeal and possible reversal of the arguably erroneous class certification decision than it is for them to clog the legal system with a multitude of individual lawsuits filed solely to preserve claims that arguably could and should be dealt with collectively. Without tolling -- at least while the putative class members seek permission to pursue an interlocutory or direct appeal -- the preferable approach will often not be taken, as the putative class members will have to file individual lawsuits in order to avoid running afoul of the appropriate statute of limitations.

Unless or until Congress enacts Proposed Rule 23(f), I would grant to plaintiffs who have been dismissed from a class action two options to pursue. First, to avoid the potential problem of litigants "sleeping on their rights," I emphasize that dismissed plaintiffs should act promptly. If dismissed plaintiffs are convinced that the district court's order denying or limiting class certification is legally unassailable, they should promptly file individual actions (or move to intervene in the named plaintiff's case) within the number of days remaining under the applicable statute of limitations period. If,

42

on the other hand, dismissed plaintiffs are convinced that the district court's class certification order is subject to reversal on appeal as an abuse of discretion, they should promptly move for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) or for a final judgment pursuant to Federal Rule of Civil Procedure 54(b) so that a direct appeal can be pursued pursuant to 28 U.S.C. § 1291. In my view, the statute of limitations does not run for the dismissed plaintiffs during the pendency of the motion for interlocutory appeal or final judgment as the dismissed plaintiffs can in no way be said to be "sleeping on their rights," and the motion serves the interests of justice in potentially preventing the filing of unnecessary lawsuits.

The district court should, in almost every instance, grant an interlocutory appeal or enter a final judgment pursuant to rule 54(b). If the requirements for certification of an appeal pursuant to section 1292(b) are not met, it will generally be the case that "no just reason for delay" exists to preclude the entry of final judgment as to the dismissed plaintiffs. See Fed. R. Civ. P. 54(b); Brandt v. Bassett (In re Southeast Banking Corp.), 69 F.3d 1539, 1547 n.2 (11th Cir. 1995) (immediate appeal proper for some parties where hardship or injustice is thereby alleviated). Once an appeal has been authorized through either section 1292(b) or section 1291 (following the entry of final judgment pursuant to rule 54(b)), the question of tolling the applicable statute of limitations for individual claims lies with the court of appeals as a matter of equitable discretion, at least where the dismissed plaintiffs accompany their appeal with a motion asserting that good cause exists for continued tolling.

To summarize, the procedure that I would implement would require plaintiffs who have been dismissed from a class action to act promptly to protect their rights to pursue their individual claims. They must file individual lawsuits or intervene in the existing lawsuit within the applicable statute of limitations, or make a prompt effort to obtain appellate review of the denial of class certification through the procedures authorized in 28 U.S.C. §§ 1291 or 1292(b). Failure to pursue prompt appellate review, under my approach, would result in a statute of limitations time bar for any individual claims the dismissed plaintiffs may have possessed. Unlike the majority's superficially pleasing bright line, the foregoing options justly provide adequate protection to dismissed class members, discourage the filing of needless lawsuits and provide clear markers for defendants regarding the scope and duration of their potential liability.

## II.

Unlike the majority, I would not retroactively impose on any of the appellants the rule announced today, whether it be the majority's or my own. The question before the court is one of first impression in this circuit. See Satterwhite v. City of Greenville, 578 F.2d 987, 997 (5th Cir. 1978) (en banc) (expressly leaving open the question of whether tolling continues until an appellate court has affirmed the district court's order denying class certification), vacated on other grounds, 445 U.S. 940 (1980). Other courts have addressed the same question, directly or indirectly, and expressed discordant views. Some courts have effectively concluded that tolling continues until the dismissed plaintiffs have an opportunity to appeal the district court's class certification

44

determination.  See Jimenez v. Weinberger, 523 F.2d 689, 696 (7th Cir. 1975) ("In this case we have no doubt that the filing of the [class action] complaint tolled the statute at least until the date of the three-judge district court decision on the merits.  If that decision had expressly refused to certify the case as a class action, we think the tolling would have continued if the plaintiffs had appealed from such a ruling . . . .") (Stevens, J.), cert. denied, 427 U.S. 912 (1976).[51]   Other courts appear to have reached the opposite conclusion.  See Calderon v. Presidio Valley Farmers Ass'n, 863 F.2d 384, 390 (5th Cir.) (per curiam) (holding that the statute of limitations begins to run again upon the district court's original denial of class certification, even if the district court later reconsiders the issue and certifies a class), cert. denied, 493 U.S. 821 (1989).[52]

---

[51] See also West Haven Sch. Dist. v. Owens-Corning Fiberglass Corp., 721 F. Supp. 1547, 1555 (D. Conn. 1988) ("[T]here was a 'definitive determination' of the class certification no earlier than when the appeals on that issue ran their course on October 20, 1986, and until that date the statute of limitation was suspended under American Pipe rule."); Byrd v. Travenol Lab., Inc., 675 F. Supp. 342, 347 (N.D. Miss. 1987) (tolling of statute of limitations ended when appeal involving denial of class certification had run its course, i.e., on the date the Supreme Court denied certiorari); Davis v. Bethlehem Steel Corp., 600 F. Supp. 1312, 1316 (D. Md.), aff'd, 769 F.2d 210 (4th Cir.), cert. denied, 474 U.S. 1021 (1985); American Tierra Corp. v. City of West Jordan, 840 P.2d 757, 762 (Utah 1992) ("We agree with the federal interpretations and conclude as a matter of Utah law that when a proper appeal of a class certification decision is taken, the tolling benefit continues on behalf of all members of the class until the class issue is finally determined by the decision on appeal.").

[52] Supportive language for the view endorsed in Calderon can also be found in the following cases: Nelson v. County of Allegheny, 860 F. Supp. 1080, 1084 (W.D. Pa. 1994), aff'd, 60 F.3d 1010 (3d Cir. 1995), cert. denied, 116 S. Ct. 1266 (1996); Chardon v. Soto, 462 U.S. 650 (1983); Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345 (1983); United Airlines, Inc. v. McDonald, 432 U.S. 385 (1977); and American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974).

Given the ambiguous state of the law when the appellants in this case were dismissed from the Carmichael class action, they urge that the new rule should not be applied to them. The appellees, of course, urge that it should. Although recognizing that it is a close call, I would allow the appellants to continue pursuing their individual claims even though those claims would otherwise be barred under either the majority's rule or my proposed one.

As this court recently stated in McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994) (en banc), cert. denied, 513 U.S. 1110 (1995), the Supreme Court has established a three-factor test for determining whether to apply a newly announced non-criminal decision retroactively, prospectively or selectively prospectively. 20 F.3d at 1565 (citing Chevron Oil Co. v. Huson, 404 U.S. 97 (1971)).

> First, the decision must announce a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression the resolution of which was not clearly foreshadowed. Second, the application of the old rule in the instant case must not contravene the purpose and operation of the provision being interpreted. And, third, application of the new rule in the instant case must be inequitable.

McKinney, 20 F.3d at 1565.

In the past, the court has concentrated on the potential inequity to the plaintiff in assessing the third factor, McKinney, 20 F.3d at 1566. Here, the inequity to the appellants is clear: their individual claims are extinguished without review of the district court's decision dismissing them from the Carmichael class action, even though they were without clear guidance on the proper route to pursue for relief. I also note the minimal

prejudice to the appellees in allowing the appellants to proceed individually. The appellants in this case ultimately brought individual lawsuits only three months after the statute of limitations would have expired if tolling commenced immediately following the district court's interlocutory order. Accordingly, it is unlikely that the appellees experienced any significant prejudice in this case in terms of lost evidence, fading memories and disappearing witnesses. The minimal prejudice to the appellees is also apparent from the fact that the class complaint in the Carmichael case notified the defendants of the substantive claims, number and specific identities of these parties. Cf. Crown, Cork & Seal, 462 U.S. at 354-55 (Powell, Rehnquist & O'Connor, JJ., concurring) (when the defendant has been notified of the subject matter and size of the prospective litigation, "the defendant normally is not prejudiced by tolling of the statute of limitations"). I therefore find that the third Chevron Oil factor is satisfied in this case.

Although it is a closer question, I also find that the first Chevron Oil factor is satisfied, because the court resolves an issue of first impression the resolution of which was not clearly foreshadowed in light of the discordant case law cited above and our express reservation of this issue in Satterwhite. Finally, I find that the second Chevron Oil factor is satisfied in light of the fact that the appellants in this case did not sleep on their rights in the face of clear contrary binding precedent.

Accordingly, because I would reverse the judgment of the district court in its entirety and remand for further proceedings, I dissent from the majority's affirmance as to appellants Barger, Black, Brooks, Budd, Carter, Davis, Giessuebel, Glaser, Havlish,

Hinduja, Jett, Lerche, Lightner, McGuirk, McLean, Murphy, Prasky, Rains, Roberts, Ryan, Smith, Sylvestri, Turner and Williamson, in addition to appellants Clarke-Iley, Johnson and Shaw.  I specially concur in the majority's reversal as to appellants Armstrong, Cizek, Richards and Walsh.